# SHER TREMONTE LLP

July 30, 2020

**VIA ECF**

The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

     Re: *Terpin v. Pinsky, et al.*, 20 Civ. 3557 (CS)

Dear Judge Seibel:

   We write on behalf of our client, Ellis Pinsky, pursuant to section 2.A of Your Honor's Individual Practices, to respectfully request a pre-motion conference concerning our anticipated motion to dismiss the Complaint pursuant to F.R.C.P. Rule 12(b)(6). The Complaint alleges that Mr. Pinsky, at age fifteen, was involved with the Doe defendants and non-defendant Nicholas Truglia in taking unauthorized possession of Plaintiff's cryptocurrency. Plaintiff asserts statutory claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act and the Computer Fraud and Abuse Act ("CFAA"), as well as common law claims for conversion, replevin and money had and received. This letter sets forth the bases for dismissing the Complaint in its entirety.

   ***The RICO Claim Is Entirely Conclusory and Legally Deficient.*** The RICO claim should be dismissed because it is based on conclusory allegations and, even if it were not, it fails to allege essential elements of RICO. To state a claim under 18 U.S.C. § 1962(c), a complaint must plausibly allege that *each* defendant "engaged in (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity (5) resulting in (6) injury to business or property." *Weir v. Cenlar FSB*, No. 16-CV-8650 (CS), 2018 WL 344317, at *4 (S.D.N.Y. Jul. 17, 2018). The Complaint here, though full of sensational prose, contains virtually no specific allegation as to Mr. Pinsky (other than the hearsay of Truglia, an indicted fraudster) and is instead replete with conclusions. For example, as to the existence of an enterprise, the Complaint alleges that a group it dubs the "Pinsky gang" is an "Enterprise," that engaged in a "scheme to defraud cryptocurrency investors and others," Compl. ¶¶ 60, 62; that Mr. Pinsky is "a cybercriminal" who is Truglia's "partner," *id.* ¶¶ 45, 47; and that the two have engaged in "multiple SIM swap frauds," *id.* ¶ 43, with no detail provided except as to the conversion of Plaintiff's cryptocurrency. Disregarding those conclusory statements and focusing instead on the paucity of well-pleaded factual allegations, the RICO claim fails for multiple reasons.

   *First*, the Complaint alleges only one predicate act—wire fraud—that constitutes racketeering activity. *Id.* ¶ 65. The CFAA is not a federal predicate identified in the statute, nor do any of the state crimes alleged qualify as predicates within the definition set forth in 18 U.S.C. § 1961(1)(A). Accordingly, the Complaint fails at the most basic level to allege that Mr. Pinsky engaged in two predicate acts of racketeering activity.

*Second*, the Complaint fails to allege an enterprise distinct from the alleged pattern of racketeering activity. The Complaint asserts in purely conclusory terms that the "racket" of the "Pinsky Gang" was "theft of cryptocurrency by means of SIM swaps." Compl. ¶ 32. No activities of the supposed enterprise are described with any specificity, apart from the allegation that Plaintiff's cryptocurrency was stolen; nor are there allegations that describe an "ongoing organization" with any "hierarchy, organization, and activities of the alleged association-in-fact enterprise," other than the claim, again, that these individuals came together to steal Plaintiff's cryptocurrency. *101 McMurray, LLC v. Porter*, No. 10-cv-9037 (CS), 2012 WL 997001, at *7 (S.D.N.Y. Mar. 26, 2012) (internal quotation marks omitted). Such failure to allege the existence of an enterprise separate and apart from the alleged racketeering activity is "fatal to Plaintiff[']s[] RICO claim." *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 459 (S.D.N.Y. 2009).

*Third*, even assuming Plaintiff could amend to add a second predicate act, the Complaint fails to allege a pattern of racketeering activity. "[A] plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (*i.e.*, past criminal conduct extending over a substantial period of time)." *GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995). The Second Circuit has never found a closed-ended pattern where the predicate acts span less than two years. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004). Here, the Complaint alleges only a *single* act of wire fraud occurring, as alleged, over the course of two *days*. Compl. ¶ 33. That is plainly insufficient to establish closed-ended continuity. While the Complaint includes conclusory allegations that the defendants "attempted to launder" the stolen cryptocurrency and have engaged in other SIM swaps "[s]ince at least 2017," *id.* ¶¶ 36, 62, those allegations suggest at most a year of activity—insufficient for closed-ended continuity. *See Liang v. Home Reno Concepts*, 803 F. App'x 444, 447-48 (2d Cir. 2020) (summary order) (affirming dismissal of RICO claim that "attempt[ed] to stretch" single act of fraud "into seven discreet acts").

As to open-ended continuity, the Complaint contains no allegation to suggest a threat of future criminal conduct. To the extent the purpose of the scheme was to obtain Plaintiff's cryptocurrency, that scheme was "*inherently* terminable" once completed. *GICC Capital Corp*, 67 F. 3d at 466. And courts have repeatedly held that the "mere risk" of recurrence "does not constitute the sort of specific threat of repetition extending indefinitely into the future that is required to support a finding of a pattern of racketeering activity." *Int'l Bhd. of Teamsters v. Carey*, 297 F. Supp. 2d 706, 716 (S.D.N.Y. 2004) (internal quotation marks omitted); *accord Cont'l Realty Corp. v. J.C. Penney Co.*, 729 F. Supp. 1452, 1454 (S.D.N.Y. 1990). Thus, the RICO claim fails plausibly to allege numerous elements of RICO and should be dismissed.

**The Claims for Conversion, Replevin, and Money Had and Received are Time-barred under New York's Borrowing Statute.** Plaintiff's state-law claims should be dismissed because all are time-barred under New York's borrowing statute, CPLR § 202. As noted, the alleged conduct here occurred on January 7, 2018. "When a nonresident sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction where the

Hon. Cathy Seibel
July 30, 2020
Page 3

cause of action accrued." *Glob. Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 484 (N.Y. 1999). To determine where the cause of action accrued, New York courts look to "the place of the injury," which, for economic loss, "is where the plaintiff resides and sustains the economic impact of the loss." *Id*. at 485. The Complaint conspicuously omits Plaintiff's domicile or residence, alleging instead that Plaintiff "*has* a residence in Los Angeles County, California." Compl. ¶ 19 (emphasis added). Plaintiff's pleadings in a separate action concerning the same incident, however, as well as a judicial decision in that case (of which this Court may take judicial notice) indicate that Plaintiff is domiciled and resides in Puerto Rico. *See Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1047 (C.D. Cal. 2019) ("Mr. Terpin is domiciled in Puerto Rico and was in Puerto Rico at the time of the incidents."); *see also id.*, Compl. ¶ 1, No. 18-cv-6975 (C.D. Cal. Aug. 15, 2018), ECF No. 1 ("Terpin is domiciled in Puerto Rico"). Under Puerto Rico law, the statutes of limitation for both conversion and replevin are one year. 31 L.P.R.A. §§ 5298(1), (2). Puerto Rico law does not recognize a cause of action for money had and received, but because that claim is duplicative of the conversion and replevin claims, the same statute of limitations applies. *See Kapernekas v. Brandhorst*, 638 F. Supp. 2d 426, 428–29 (S.D.N.Y. 2009). Accordingly, the state-law claims were time-barred as of January 8, 2019, sixteen months before this action was commenced.

**The CFAA Claim Is Time-barred.** The CFAA's private right of action contains a two-year statute of limitations which begins to run when the "act complained of is completed or the date when the damage is discovered." 18 U.S.C. § 1030(g). The statute of limitations begins to run even if the victim does not know the alleged hacker's identity. *See Sewell v. Bernardin*, 795 F.3d 337, 342 (2d Cir. 2015). The Complaint here alleges that the hack occurred on January 7, 2018 when "Plaintiff's phone went dead." Compl. ¶ 33. In the AT&T litigation, Plaintiff alleged that because he had been the victim of previous attempted SIM swaps, as soon as his phone went dead on January 7, 2018, "he instantly attempted to contact AT&T to have the telephone number immediately canceled so that the hackers would not gain access to his Personal Information and accounts." Compl. ¶ 73, *Terpin v. AT&T*, *supra*. Accordingly, the statute of limitations on the CFAA claim expired on January 7, 2020, five months before this lawsuit was filed.

For the foregoing reasons, we respectfully request a conference to set a briefing schedule for Defendant's motion to dismiss pursuant to Rule 12(b)(6).

Respectfully submitted,

/s/
Noam Biale
Michael Tremonte
SHER TREMONTE LLP

*Attorneys for Ellis Pinsky*

cc: Cornelius P. McCarthy, Esq. (via ECF)