# CHEHEBAR DEVENEY & PHILLIPS
485 MADISON AVENUE, SUITE 1301
NEW YORK, NEW YORK 10022

CORNELIUS P. MCCARTHY

TELEPHONE: (212) 532-8204
FACSIMILE: (212) 753-8101

August 19, 2020

Hon. Cathy Seibel
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, New York 10601-4150

       Re: <u>Terpin v. Pinsky, 20-CV-3557 (CS)</u>

Dear Judge Seibel:

  On behalf of our client, Plaintiff Michael Terpin, we are writing in response to Defendant Mr. Pinsky's counsel's July 30th letter requesting a conference on their anticipated motion to dismiss. For the reasons summarized below, the anticipated motion lacks merit.

  It is troubling to learn that Mr. Pinsky, who has admitted his guilt and already returned $2 million in stolen cryptocurrency, is now apparently prepared to pay his new counsel substantial sums to embark on the classic scorched earth tactic of raising specious issues to avoid his legal liabilities. At best, his requested motion practice is a premature and improper attempt to take discovery via pleading practice. At worst, it is a calculated effort to burn stolen funds to prevent their return. In either case, Defendant's claims are meritless.

**PLAINTIFF'S RICO CLAIMS ARE NEITHER CONCLUSORY NOR DEFICIENT**

  <u>First</u>, Plaintiff has alleged multiple predicate acts and violations that constitute a pattern of racketeering activity, including violations of several federal criminal statutes referenced in 18 U.S.C. § 1961(B) (defining racketeering activity). In addition to wire fraud under 18 U.S.C. § 1343, which is referenced in the complaint, Plaintiff has alleged that Defendant engaged, among other things, in both money laundering under 18 U.S.C. § 1956(a)(1)(B)(i)[1] and multiple

---

[1] As to money laundering, *see* Complaint ¶ 1 (enterprise laundered Plaintiff's cryptocurrency); ¶ 7 (financial crimes of confederates include "money laundering"); ¶ 10 (Pinsky admits wire fraud and money laundering); ¶¶ 36-40 (Pinsky and gang launder Mr. Terpin's cryptocurrency); ¶ 42 (Truglia engages in money laundering of cryptocurrency); ¶ 43 (Truglia describes how Pinsky launders cryptocurrency); ¶ 56 (defendants adept at money laundering); ¶ 64 (criminal enterprise exfiltrated money from victims' accounts to those under its control). *See also*

acts of aggravated identity theft under 18 U.S.C. § 1028(A)(a)(1).[2] Both are RICO predicates expressly specified in 18 U.S.C. § 1961(B)

Second, contrary to Defendant's assertion, Plaintiff's Complaint alleges an enterprise distinct from the actions directed to Mr. Terpin. The Complaint alleges the existence of a group of individuals directed by Pinsky, including Truglia, who engaged in multiple criminal activities involving victims other than Mr. Terpin. *See e.g.* Complaint ¶¶ 1-6 (enterprise involves Pinsky, Truglia and others, discovers information about victims, forges identity papers, bribes carriers, discovers cryptocurrency holdings, intercepts two factor authentication methods, etc.); ¶ 11 (Pinsky claims to have $100 million, far more than the $24 million in losses to Terpin); ¶ 14 (enterprise engaged in multiple SIM swaps); ¶¶ 43-45 (Truglia reports Pinsky had over $70-80 million and engaged in multiple SIM swaps); ¶¶ 47-49 (Pinsky claims to have $100 million through "scores of hacks"); ¶ 62 (enterprise defrauded multiple cryptocurrency investors). These allegations – which Plaintiff supports with admissions from Pinsky and his co-conspirators – are more than adequate at the pleading stage.[3] While further details are more properly fleshed out in discovery rather than pleading motion practice, Plaintiff can readily amend the Complaint to allege additional details if the Court deems that necessary, including the specific places from and dates on which Pinsky laundered Mr. Terpin's crypto, as well as Pinsky's involvement in other thefts, including a specific unresolved cryptocurrency theft even larger than what was taken from Mr. Terpin.

Third, "in cases where the acts of the defendant or the enterprise were inherently unlawful, such as murder or obstruction of justice, and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally have concluded that the requisite threat of continuity was adequately established by the nature of the activity, even though the period spanned by the racketeering acts was short." *United States v. Aulicino*, 44 F.3d 1102, 1110-1111 (2d Cir. 1995); *see also GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) ("assessing whether a threat of continuity exists look[s] first to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed"). Nevertheless, the Complaint also alleges both open-ended racketeering activity, *see e.g.* Complaint ¶¶ 1-6, 41-50, and crypto thefts by Pinsky et al. starting at age 13, *id.* ¶ 47. And, separate from Mr. Pinsky's potential involvement in ongoing activity in the form of new and/or future thefts, Mr. Terpin has alleged Mr. Pinsky's ongoing possession of and hiding of the cryptocurrency stolen from him by Mr. Pinsky and his co-conspirators. *Id.* ¶¶ 45, 48-50.

---

Indictment in United States v. Truglia, 19 Crim 921 (Dec. 19, 2019, S.D.N.Y) (charging wire fraud and money laundering).

[2] As to aggravated identity theft, see Complaint ¶¶ 2-3 (Pinsky and Truglia steal victims' SIMs after conning phone carriers); ¶ 5 (Pinsky, Truglia and others impersonate victims to obtain SIM and forge identity papers); ¶ 45 (Truglia describes how gang locates and impersonates victims); ¶ 64 (enterprise used false identifications and other information to impersonate victims).

[3] The cases cited by Defendants are more than distinguishable. In *101 McMurray, LLC v. Porter*, No. 10-cv-9037 (CS), 2012 WL 997001, at *7 (S.D.N.Y. Mar. 26, 2012), plaintiff alleged "mere legal conclusions without factual support", and in *Kottler v. Deutsche Bank AG*, 607 F.Supp. 2d 447, 459 (S.D.N.Y. 2009), plaintiff did not allege a criminal enterprise separate from Deutsche Bank, which sold fraudulent tax products.

## THE REMAINING CLAIMS ARE NOT TIME-BARRED

Defendant's assertion that the pendent state claims are time barred is also meritless.

First, for a claim of replevin by a non-New York plaintiff, the place of accrual under New York law is not plaintiff's residence. Rather, it is the place where defendant refuses the demand to return the chattel that he wrongfully possesses. *In re Estate of McLaughlin*, 78 A.D.3d 1304, 1305-06, 910 N.Y.S.2d 252, 254 (3d Dep't 2010). Applied here, that place was New York, where Mr. Pinsky lives and where he was located when he refused to return all of Plaintiff's crypto-currency. As to that claim, therefore, the borrowing statute does not apply, *see id.*, and New York's three-year period governs and clearly has not run. *See* CPLR 214(3)

Second, even assuming Puerto Rico law applies, Plaintiff's complaint was filed before any applicable limitations period expired. Puerto Rico's one-year statute of limitations on conversion begins to run when Plaintiff (i) suffers injury and (ii) learns (or reasonably could) the identity of the tortfeasor; and that period is "interrupted" and started anew by extra-judicial communications between the parties regarding the claim. *See* 31 L.P.R.A. §§ 5298, 5303; *Barreto Peat, Inc. v. Luis A. Ayala Sucrs., Inc.*, 799 F.Supp. 321, 323 (D. P. R. 1989) ("one-year statute . . . starts on the date plaintiff became aware of the damage and who caused [it]"); *Gonzalez v. Fireman's Fund Ins. Co.*, 385 F.Supp. 140, 143 (D.P.R. 1974) (statute . . . interrupted by extrajudicial negotiations"); *Deutsche Bank Trust Co. Americas v. Doral Financial Corp.*, 841 F.Supp.2d 593, 604 (D.P.R. 2012) ("each [extrajudicial] communication[] restart[s] . . . limitation period"); *see also Norex Petroleum Ltd. v. Blavatnik*, 23 N.Y.3d 665, 676 (2014) ("when borrowing foreign law pursuant to CPLR 202, foreign tolls and extensions must be imported too"). The same law governs replevin or money had and received if those claims are deemed to accrue in Puerto Rico. 31 L.P.R.A. § 5298.

Here, the statute of limitations could not have run by May 12, 2020, the date Mr. Pinsky was served. Plaintiff did not learn of Mr. Pinsky's conduct until December, 2018, and only after diligent investigation. The claims were then interrupted by extra-judicial communications as of January 3, 2020, when Mr. Pinsky's mother was called and his lawyer – John Siffert, Esq. – called back and was sent an email describing the claims, and again on January 7, 2019, when Messrs. O'Donnell and McCarthy met Mr. Siffert and gave him a copy of the draft complaint setting forth the RICO and three pendent state claims. These extra-judicial communications continued through months that followed as counsel negotiated and exchanged settlement drafts. On April 24, 2020, having returned only $2 million to our client, Mr. Pinsky rejected the deal but even then requested additional conversations, and in the meantime, both New York and Puerto Rico suspended their statutes of limitations given Covid. See N.Y. Executive Order Nos. 202.8, 202.38, 202.48 and 202.55; see also http://www.ramajudicial.pr/Prensa/comunicados/2020/05-02-20.htm (Puerto Rico Supreme Court's announcement of further extension until June 8, 2020).

Third, the CFAA's limitations period would likewise have been equitably tolled due to the intervening extra-judicial communications set forth above. See Acierno v. Barnhart, 475 F.3d 77, 81 (2d Cir. 2007), quoting Bowen v. City of New York, 476 U.S. 467, 480 (1986).

For the foregoing reasons, Defendant's anticipated motion to dismiss is meritless.

                                      Respectfully submitted,

                                      /s/_____
                                      Cornelius P. McCarthy
                                      CHEHEBAR DEVENEY & PHILLIPS LLP

                                      /s/_____
                                      Pierce O'Donnell
                                      GREENBERG GLUSKER FIELDS
                                       CLAMAN & MACHTINGER LLP

cc: N. Biale (via ECF)
    M. Tremonte (via ECF)

83764-00004/3836653.1