**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MICHAEL TERPIN,

                              Plaintiff,                    No. 20 CV 3557 (CS)

        -against-


ELLIS PINSKY, as an individual; and DOES 1-20,
Inclusive,

                              Defendants.

**DEFENDANT ELLIS PINSKY'S MEMORANDUM OF LAW IN SUPPORT OF HIS**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Noam Biale
Michael Tremonte
Mark Cuccaro
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
nbiale@shertremonte.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ............................................................................................................ 2

ARGUMENT ................................................................................................................. 5

I.     THE FAC FAILS TO STATE A CLAIM AGAINST PINSKY ................................. 5

     A.     THE RICO CLAIM FAILS ............................................................ 6

          1.     The FAC Fails to Allege an Enterprise ............................... 6

               a.     The FAC Fails to Allege an Enterprise
Distinct from the Alleged Pattern of
Racketeering Activity ............................................. 7

               b.     The FAC Fails to Allege Longevity
Sufficient to Meet the Structural
Requirements of an Enterprise ............................... 10

               c.     The FAC Alleges a Criminal Conspiracy,
But a Conspiracy Without More Is
Not an Enterprise ................................................... 12

          2.     The FAC Fails to Allege a Continuing Pattern
of Racketeering Activity ...................................................... 13

               a.     The FAC Fails to Allege a Closed-Ended Pattern ................. 16

               b.     The FAC Fails to Allege an Open-Ended Pattern.................. 21

     B.     THE COMMON LAW CLAIMS ARE TIME-BARRED............................. 26

          1.     Under the New York Borrowing Statute,
Puerto Rico Law Governs the Statute of Limitations
for the Common Law Claims............................................... 26

          2.     Puerto Rico's Statutory Tolling Provision Extends
Plaintiff's Claims to January 7, 2020, Four Months
Before the Complaint Was Filed.......................................... 28

          3.     Equitable Tolling Does Not Apply ...................................... 31

     C.     THE REPLEVIN CLAIM FAILS BECAUSE THE FAC
DOES NOT ALLEGE THAT ANY IDENTIFIABLE
PROPERTY IS IN PINSKY'S POSSESSION............................................. 32

     D.     THE FAC'S CLAIM FOR A PRELIMINARY AND
PERMANENT INJUNCTION SHOULD BE DISMISSED.......................... 33

CONCLUSION............................................................................................................. 34

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*101 McMurray, LLC v. Porter*,
    No. 10-cv-9037 (CS), 2012 WL 997001 (S.D.N.Y. Mar. 26, 2012) ......................... 10, 18

*Allen v. Handszer*,
    560 N.Y.S.2d 593 (N.Y. Sup. Ct. 1990) ......................................................... 28

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010).......................................................................... 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................... 5

*Bangladesh Bank v. Rizal Commercial Banking Corp.*,
    No. 19 Civ. 983 (LGS), 2020 WL 1322275 (S.D.N.Y. Mar. 20, 2020) ................ 8, 16, 25

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
    No. 93 CIV. 6876 (LMM), 2001 WL 492363 (S.D.N.Y. May 9, 2001) ......................... 26

*Barreto Peat, Inc. v. Luis A. Ayala Colon Sucrs., Inc.*,
    709 F. Supp. 321 (D.P.R. 1989).................................................................... 27

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................ 18

*Benitez-Pons v. Com. of Puerto Rico*,
    136 F.3d 54 (1st Cir. 1998)........................................................................... 31

*Bertin v. United States*,
    478 F.3d 489 (2d Cir. 2007).......................................................................... 32

*Bolarinwa v. Williams*,
    593 F.3d 226 (2d Cir. 2010).......................................................................... 32

*Bonilla-Aviles v. Southmark San Juan, Inc.*,
    992 F.2d 391 (1st Cir. 1993).................................................................... 29, 30

*Boyle v. United States*,
    556 U.S. 938 (2009)................................................................................ *passim*

*Broidy Capital Management LLC v. Muzin*,
    No. 19-cv-0150 (DLF), 2020 WL 1536350 (D.D.C. Mar. 31, 2020).................. 19, 20, 25

*Bryan v. Wal-Mart Puerto Rico, Inc.*,
    951 F. Supp. 2d 236 (D.P.R. 2013)................................................................. 30

*Cantor Fitzgerald Inc. v. Lutnick*,
    313 F.3d 704 (2d Cir. 2002)......................................................................... 26

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001)..................................................................................... 11

*Chiste v. Hotels.com L.P.*,
    756 F. Supp. 2d 382 (S.D.N.Y. 2010) .......................................................... 27

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
    187 F.3d 229 (2d Cir. 1999)................................................................... 17, 23

*Cont'l Realty Corp. v. J.C. Penney Co.*,
    729 F. Supp. 1452 (S.D.N.Y. 1990) ............................................................ 14

*Crawford v. Franklin Credit Mgmt. Corp.*,
    758 F.3d 473 (2d Cir. 2014).......................................................................... 20

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001)..................................................................... 6, 14

*Dempsey v. Sanders*,
    132 F. Supp. 2d 222 (S.D.N.Y. 2001) ......................................................... 25

*Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC*,
    140 N.E.3d 511 (N.Y. 2019)....................................................................... 26

*Dore v. Wormley*,
    690 F. Supp. 2d 176 (S.D.N.Y. 2010) .......................................................... 33

*Díaz de Diana v. A.J.A.S. Ins. Co.*,
    110 P.R.R. 602 (1980) ................................................................................ 29

*Evercrete Corp. v. H–Cap Ltd.*,
    429 F. Supp. 2d 612 (S.D.N.Y. 2006) .......................................................... 15

*Faber v. Metro. Life Ins. Co.*,
    648 F.3d 98 (2d Cir. 2011)............................................................................ 5

*FD Prop. Holding, Inc. v. U.S. Traffic Corp.*,
    206 F. Supp. 2d 362 (E.D.N.Y. 2002) .................................................... 15, 24

*Feinberg v. Katz*,
    No. 99 CIV. 45 (CSH), 2002 WL 1751135 (S.D.N.Y. July 26, 2002)............................ 10

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)................................................................................ 6, 8, 18

*First Nationwide Bank v. Gelt Funding, Corp.*,
    820 F. Supp. 89 (S.D.N.Y. 1993) ................................................................. 16

*Foster v. 2001 Real Estate*,
    No. 14 CIV. 9434 (RWS), 2015 WL 7587360 (S.D.N.Y. Nov. 24, 2015)...................... 13

*Garcia Colon v. Garcia Rinaldi*,
    340 F. Supp. 2d 113 (D.P.R. 2004).................................................................. 28

*GICC Capital Corp. v. Tech. Fin. Grp., Inc.*,
    67 F.3d 463 (2d Cir. 1995)............................................................................ 14, 21

*Glob. Fin. Corp. v. Triarc Corp.*,
    715 N.E.2d 482 (N.Y. 1999)......................................................................... 26

*Green Bus Lines, Inc. v. Gen. Motors Corp.*,
    565 N.Y.S.2d 124 (N.Y. App. Div. 1991) ...................................................... 27

*Greenberg v. Blake*,
    No. 09CIV.4347 (BMC), 2010 WL 2400064 (E.D.N.Y. June 10, 2010)........................ 13

*Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*,
    No. 15-CV-3784 (PKC), 2016 WL 6110565 (S.D.N.Y. Aug. 4, 2016) ..................... 8, 13

*H.J., Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989)................................................................................. 13, 14, 21

*Heckl v. Walsh*,
    996 N.Y.S.2d 413 (N.Y. App. Div. 2014) ...................................................... 33

*In re Coudert Bros. LLP*,
    673 F.3d 180 (2d Cir. 2012)........................................................................... 27

*In re Enron Corp.*,
    419 F.3d 115 (2d Cir. 2005)........................................................................... 32

*In re Estate of McLaughlin*,
    910 N.Y.S.2d 252 (N.Y. App. Div. Nov. 4, 2010) .......................................... 26

*Int'l Bhd. of Teamsters v. Carey*,
    297 F. Supp. 2d 706 (S.D.N.Y. 2004)  ......................................................... 23, 24

*Ins. Co. of N. Am. v. ABB Power Generation, Inc.*,
    690 N.E.2d 1249 (N.Y. 1997)....................................................................... 27

*Kapernekas v. Brandhorst*,
    638 F. Supp. 2d 426 (S.D.N.Y. 2009) ............................................................... 27

*Kelly v. Lohan*,
    No. 08 CV 2205 (JG)(ARL), 2008 WL 4693317 (E.D.N.Y. Oct. 23, 2008).................. 31

*Kery v. Am. Airlines, Inc.*,
    931 F. Supp. 947 (D.P.R. 1995)......................................................................... 29

*Kottler v. Deutsche Bank AG*,
    607 F. Supp. 2d 447 (S.D.N.Y. 2009) ................................................................. 6

*M & D Sportswear, Inc. v. PRL U.S.A. Holdings, Inc.*,
    No. 02 CIV. 1562(GEL), 2002 WL 31548495 (S.D.N.Y. Nov. 14, 2002)..................... 33

*Mgmt. Comput. Servs. v. Hawkins, Ash, Baptie & Co.*,
    883 F.2d 48 (7th Cir. 1989) .............................................................................. 10

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993)............................................................................... 19

*Morris v. Zimmer*,
    No. 10 CV 4146(VB), 2011 WL 5533339 (S.D.N.Y. Nov. 10, 2011) ........................... 25

*Nieves-Vega v. Ortiz-Quinones*,
    443 F.3d 134 (1st Cir. 2006)......................................................................... 30, 31

*Petroholding Dominicana, Ltd. v. Gordon*,
    No. 18 CIV. 1497 (KPF), 2019 WL 2343658 (S.D.N.Y. June 3, 2019)......................... 26

*Rajaratnam v. Motley Rice, LLC*,
    449 F. Supp. 3d 45 (E.D.N.Y. 2020) .................................................................. 24

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)......................................................................................... 12

*Rite Aid of N.Y., Inc. v. 1199SEIU United HealthCare Workers E.*,
    334 F. Supp. 3d 568 (S.D.N.Y. 2017) ................................................................ 32

*Roach v. Morse*,
    440 F.3d 53 (2d Cir. 2006)................................................................................ 33

*Rodriguez Narvaez v. Nazario*,
    895 F.2d 38 (1st Cir. 1990)........................................................................... 29, 30

*Rojas-Buscaglia v. Taburno-Vasarhelyi*,
    199 F. Supp. 3d 520 (D.P.R. 2016).................................................................... 28

*Roper v. Simmons,*
   543 U.S. 551 (2005) ................................................................................ 25

*Rothman v. Gregor,*
   220 F.3d 81 (2d Cir. 2000) ...................................................................... 12

*Salinger v. Colting,*
   607 F.3d 68 (2d Cir. 2010) ...................................................................... 33

*Sedima, S.P.R.L. v. Imrex Co.,*
   473 U.S. 479 (1985) .................................................................................. 6

*Sewell v. Bernardin,*
   795 F.3d 337 (2d Cir. 2015) ...................................................................... 5

*Shamis v. Ambassador Factors Corp.,*
   No. 95 CIV. 9818 (RWS), 1997 WL 473577 (S.D.N.Y. Aug. 18, 1997) ...................... 25

*Simon v. KeySpan Corp.,*
   694 F.3d 196 (2d Cir. 2012) ...................................................................... 5

*Spool v. World Child Int'l Adoption Agency,*
   520 F.3d 178 (2d Cir. 2008) .......................................................... 17, 18, 23

*Terpin v. AT&T Mobility, LLC,*
   399 F. Supp. 3d 1035 (C.D. Cal. 2019) ...................................................... 28

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,*
   60 F.3d 27 (2d Cir. 1995) ........................................................................ 33

*United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v.
   Walgreen Co.,*
   719 F.3d 849 (7th Cir. 2013) ..................................................................... 9

*United States v. Aulicino,*
   44 F.3d 1102 (2d Cir. 1995) .......................................................... 14, 21, 22, 23

*United States v. Coiro,*
   922 F.2d 1008 (2d Cir. 1991) .................................................................... 22

*United States v. Cooper,*
   343 F. App'x 830 (3d Cir. 2009) ............................................................... 11

*United States v. Dixon,*
   167 F. App'x 841 (2d Cir. 2006) ............................................................... 11

*United States v. Faiella*,
    39 F. Supp. 3d 544 (S.D.N.Y. 2014) ............................................................... 27

*United States v. Harris*,
    695 F.3d 1125 (10th Cir. 2012) ..................................................................... 11

*United States v. Indelicato*,
    865 F.2d 1370 (2d Cir. 1989)........................................................................ 22

*United States v. King*,
    910 F.3d 320 (7th Cir. 2018) ........................................................................ 11

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) ........................................................................ 17

*United States v. Simmons*,
    923 F.2d 934 (2d Cir. 1991)......................................................................... 22

*United States v. Turkette*,
    452 U.S. 576 (1981)........................................................................................ 6

*Valentin-Vega v. Allstate Ins. Co.*,
    No. CIV. 10-1073 GAG, 2011 WL 1843156 (D.P.R. May 16, 2011)...................... 30, 31

*Woodstock Ventures LC v. Woodstock Roots, LLC*,
    387 F. Supp. 3d 306 (S.D.N.Y. 2019) ............................................................ 34

*Zerilli-Edelglass v. N.Y.C. Trans. Auth.*,
    333 F.3d 74 (2d Cir. 2003)........................................................................... 32

**Statutes**

18 U.S.C. § 1030................................................................................................... 3

18 U.S.C. § 1961.............................................................................................. 6, 17

18 U.S.C. § 1962........................................................................................... 3, 6

31 L.P.R.A. § 5298 ............................................................................................... 27

Cal. Civ. Proc. Code § 338 .................................................................................. 27

Nev. Rev. Stat. Ann. § 11.190 ............................................................................. 27

P.R. Laws Ann. tit. 31, § 5303............................................................................. 28, 29

**Rules**

Federal Rule of Civil Procedure 9(b) ................................................................... *passim*

Federal Rule of Civil Procedure 12(b) .......................................................................... 5

N.Y. C.P.L.R. § 503(a) ............................................................................................... 27

N.Y. C.P.L.R. § 202 ....................................................................................... 26, 27, 28

**Other Authorities**

Lubomir Tassev, *Nicehash Returns 60% of Bitcoin Stolen in the Hack,*
    Bitcoin.com, Aug. 27, 2018,
      https://news.bitcoin.com/nicehash-returns-60-of-coins-stolen-in-the-hack/ ................... 19

W. Joseph Salvador, *Dismantling the Internet Mafia: Rico's Applicability to Cyber Crime*,
    41 Rutgers Computer & Tech. L.J. 268 (2015) ............................................................. 17

Defendant Ellis Pinsky ("Pinsky" or "Defendant"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of his Motion to Dismiss the First Amended Complaint (the "FAC") filed by Michael Terpin ("Terpin" or "Plaintiff").

## PRELIMINARY STATEMENT

This is not a RICO case.  There is no enterprise or continuous pattern of racketeering plausibly alleged.  Plaintiff alleges that in one incident, which spanned at most several days, Defendant and others wrongfully obtained his cryptocurrency, monetized it, and divided up the proceeds.  There is a well-recognized cause of action for such conduct: conversion. Unfortunately for Plaintiff, his claim of conversion and other common law claims are barred by the statute of limitations, and the FAC does not articulate any basis to toll the statute of limitations.  Accordingly, all of Plaintiff's claims fail and the case should be dismissed.

The RICO claim fails for two independent reasons.

*First*, the FAC fails to allege an enterprise with an ascertainable structure beyond that inherent in the alleged racketeering activity and with sufficient longevity to accomplish its aims. The FAC describes the acts that constituted the theft of Plaintiff's cryptocurrency.  It then extrapolates from those acts to allege that each "member" of the "enterprise" was assigned a distinct "role."  Yet, the FAC nowhere alleges any activity of the enterprise other than engaging in the purported racketeering activity, namely, hacking by means of "SIM swaps."  And because the alleged theft and "laundering" of Plaintiff's cryptocurrency occurred over a few days – and the FAC *at most* extends (through vague and general allegations) the period of activity to two years – it fails to allege longevity sufficient to meet the structural requirements of an enterprise.

*Second*, the FAC fails to allege a continuous pattern of racketeering activity because, other than the theft of Plaintiff's cryptocurrency, it simply alleges other instances of "hacking." This does not establish closed-ended continuity because "hacking" is not a RICO predicate.

1

Even if it were assumed that the alleged hacking involved fraud, the FAC fails to allege such instances of fraud with particularity, as required by Federal Rule of Civil Procedure 9(b).  It alleges that other victims were hacked, but does not state the who, what, where, when or any of the circumstances constituting the supposed fraud.  The FAC fails to allege open-ended continuity because the alleged conduct of the supposed enterprise is not, by its nature, likely to repeat and instead was inherently terminable.  Each of these deficiencies on its own would fatally undermine Plaintiff's RICO claim; together, they eviscerate it.

Plaintiff's common law causes of action – for conversion, replevin, and money had and received – are all barred by the statute of limitations.  Under New York's borrowing statute, Puerto Rico's one-year limitations period applies to the common law claims because all allege economic injury and Plaintiff was a resident of Puerto Rico at the time of the alleged hack. Plaintiff's claims accrued no later than December 2018, when he learned of Defendant's alleged involvement.  Under Puerto Rico's statutory tolling provision, the statute of limitations on his claims was tolled – and began to run for one year again – on January 7, 2019, when he provided a copy of a draft complaint to Defendant's prior counsel.  But that is where any claim of tolling ends.  Puerto Rico law is clear that settlement discussions *after* an extrajudicial communication of the claim do *not* further toll the statute.  And pre-filing settlement negotiations do not provide a basis for equitable tolling.  That is why tolling agreements exist.  But here the parties did not enter into one.  Accordingly, Plaintiff's common law claims all expired on January 7, 2020, four months before Plaintiff filed his original complaint.  Thus, the FAC fails to state a claim on which relief can be granted, and the Court should dismiss it in its entirety.

## BACKGROUND

On May 7, 2020, Plaintiff filed this action against Pinsky and unnamed Doe defendants. The original complaint, Dkt. # 1 (the "Complaint"), asserted claims under the Racketeer

2

Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c), conversion, replevin, money had and received, and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. The Complaint stated, "This lawsuit is about the unauthorized and wrongful taking from Plaintiff of nearly $24 million in cryptocurrency" by "Pinsky and his co-conspirators, including [Nicholas] Truglia and the Doe Defendants." Compl. ¶ 25. The Complaint went on to allege that on January 7, 2018, when Pinsky was fifteen years old, the defendants stole Plaintiff's cryptocurrency by engaging in a "SIM swap fraud" whereby they ported Plaintiff's personal information to a SIM card they controlled, "took over Plaintiff's cell phone with his AT&T wireless number," intercepted 2-factor authentication messages and, consequently, accessed Plaintiff's accounts, stealing "nearly $24 million worth of cryptocurrency in the form of Triggers, Skycoin, and Steem . . . on January 7 and 8, 2018." *Id.* ¶¶ 30-33. The Complaint recounted statements by Truglia taking responsibility for the hack and claiming that Pinsky was involved, and alleged that both Truglia and Pinsky had boasted about their respective wealth. *Id.* ¶¶ 41-49. The Complaint noted that Truglia had been charged with grand larceny in a separate cryptocurrency theft in California and had been federally indicted in New York for stealing Plaintiff's cryptocurrency. *Id.* ¶¶ 3, 22.[1]

The Complaint charged that Pinsky, Truglia, and others were part of a RICO enterprise it called "the Pinsky Gang," *id.* ¶ 32, which had engaged in various crimes including wire fraud, violations of the CFAA, and several computer-related state crimes. *Id.* ¶ 65. The Complaint also alleged common law claims for conversion, money had and received, and replevin, as well as violations of the CFAA. *Id.* ¶¶ 71-91. Finally, the Complaint sought a preliminary and permanent injunction because of "the substantial threat of loss [of Plaintiff's cryptocurrency

---

[1]     That indictment charges Truglia with wire fraud conspiracy and money laundering conspiracy. It does not charge Truglia under RICO. *See* Indictment, *United States v. Truglia*, No. 19-cr-921 (AKH) (S.D.N.Y. Dec. 19, 2019), ECF No. 1.

holdings] through transfers to unknown accounts or persons," which "is causing and will continue to cause Plaintiff great and irreparable harm, for which Plaintiff has no adequate remedy at law." *Id.* ¶ 93.

On July 30, 2020, Pinsky filed a pre-motion letter requesting a conference on an anticipated motion to dismiss. Dkt. #17. The letter indicated that Pinsky would seek to dismiss the Complaint on the grounds that the RICO cause of action failed to state a claim because (a) it failed to allege more than one predicate act (wire fraud); (b) it failed to allege an enterprise separate from the alleged pattern of racketeering activity; and (c) the alleged pattern lacked open-ended and closed-ended continuity. *Id.* at 1-2. The letter also indicated that the common law claims and CFAA claim were time-barred. *Id.* at 3. On August 26, 2020, the Court held a pre-motion conference, directed Plaintiff to amend the Complaint, and set a briefing schedule for a motion to dismiss. *See* Minute Entry dated Aug. 28, 2020.

On September 11, 2020, Plaintiff served the FAC on Pinsky. The FAC largely tracks the original Complaint in its allegations concerning the conversion of Plaintiff's cryptocurrency. FAC ¶¶ 36-74. Of note, the FAC withdraws the CFAA claim. It adds alleged predicate acts of money laundering, aggravated identity theft, and extortion, all committed in connection with the theft of Plaintiff's cryptocurrency. *Id.* ¶¶ 9-10, 95. As to the alleged extortion, the FAC alleges that Pinsky extorted an accomplice who was involved in the distribution of the proceeds from the Terpin hack. *Id.* ¶ 96. The FAC also alleges that the purported enterprise (no longer called the Pinsky Gang) "had an existence separate and apart from the hack it perpetrated on Mr. Terpin," in that it was active before and after the hack. *Id.* ¶ 10. It alleges "on information and belief" that the enterprise engaged in other activities, *id.* ¶ 75, and argues that Pinsky's boasts about having substantial wealth indicate that "another hack of significant quantity would [be] likely to have occurred," *id.* ¶ 77. The FAC also argues that the enterprise was of a continuing nature

4

because, given its "inherently unlawful nature," the continuity of its conduct "is deemed established under applicable Second Circuit law." *Id.* ¶ 11. Finally, the FAC includes various allegations regarding confidential settlement discussions between the parties in an apparent bid to toll the statute of limitations on the common law claims. *Id.* ¶¶ 78-80.

The FAC seeks triple damages on Plaintiff's RICO claim plus attorney's fees, *id.* ¶ 99-100, compensatory and punitive damages, as well as return of his property, *id.* ¶¶ 106, 109, 115-16, and a preliminary and permanent injunction, *id.* ¶ 119, though in the nearly five months since the original Complaint was filed, Plaintiff has yet to file a motion for a preliminary injunction.

## ARGUMENT

## I.   THE FAC FAILS TO STATE A CLAIM AGAINST PINSKY

The FAC fails to plausibly allege a viable cause of action against Pinsky. To survive a motion to dismiss pursuant to Rule 12(b)(6), the FAC must allege facts that give rise to the reasonable inference that Pinsky is liable for the alleged misconduct. *Simon v. KeySpan Corp.*, 694 F.3d 196, 201 (2d Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). Although the Court must accept as true all factual allegations and draw all reasonable inferences in Plaintiff's favor, it is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011). Dismissal is "appropriate when a defendant raises a statutory bar, such as lack of timeliness . . . and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015).

Here, the RICO claim fails because the FAC fails to plausibly allege an "enterprise" that has engaged in a "pattern of racketeering activity," as those terms are defined in the RICO statute. The common law claims are barred by the applicable statute of limitations. And the

5

claim for a preliminary and permanent injunction fails because Plaintiff had an adequate remedy

at law (when his claims were timely), is unlikely to prevail at trial, and the failure to move for an

injunction demonstrates that there is no risk of irreparable harm. Accordingly, the Court should

dismiss the FAC in its entirety.

### A.      THE RICO CLAIM FAILS

The FAC asserts a claim against all defendants for a violation of RICO, 18 U.S.C.

§ 1962(c). "To establish a violation of 18 U.S.C. § 1962(c) . . . , a plaintiff must show '(1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *DeFalco v.*

*Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479,

496 (1985)). "The requirements of section 1962(c) must be established as to each individual

defendant." *Id.* The RICO claim here fails because the FAC fails to plausibly allege the

enterprise and pattern elements.

### 1.      The FAC Fails to Allege an Enterprise

A RICO "enterprise" is defined as "any individual, partnership, corporation, association,

or other legal entity, and any union or group of individuals associated in fact although not a legal

entity." 18 U.S.C. § 1961(4). Where, as here, a complaint alleges an association-in-fact

enterprise, courts look to the "hierarchy, organization, and activities" of the association to

determine whether "its members functioned as a unit." *First Capital Asset Mgmt. v. Satinwood*,

*Inc.*, 385 F.3d 159, 174-75 (2d Cir. 2004) (internal quotation marks omitted). The enterprise

"must have an ascertainable structure beyond that inherent in the pattern of racketeering activity

in which it engages." *Boyle v. United States*, 556 U.S. 938, 940-41 (2009) (internal quotation

marks omitted). Stated another way, the enterprise "is not the 'pattern of racketeering activity';

it is an entity separate and apart from the pattern of activity in which it engages." *United States*

*v. Turkette*, 452 U.S. 576, 583 (1981); *accord Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d

447, 459 (S.D.N.Y. 2009) (failure to allege existence of enterprise separate from alleged pattern of racketeering activity is "fatal to [a] RICO claim").  While the structure of the enterprise need not be formal, it must nevertheless be "ascertainable," possessing "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle*, 556 U.S. at 941.

> a.  The FAC Fails to Allege an Enterprise Distinct from the Alleged Pattern of Racketeering Activity

The FAC fails plausibly to allege an enterprise separate from the alleged pattern of racketeering activity.  Although it states that "the Enterprise had an existence separate and apart from the hack it perpetrated on Mr. Terpin," FAC ¶ 10, the factual allegations in support of that statement are identical to the alleged pattern of racketeering activity.  For example, the FAC alleges that "[i]n his early teens and along with confederates, [Pinsky] began hacking computers and phishing victims with the mission of accessing his victims' private accounts where they store cryptocurrency holdings."  *Id.* ¶ 2.  The FAC goes on to allege that "[o]ne of [Pinsky's] and the Enterprise's major criminal activities has been engaging in SIM swaps."  *Id.*; *see also id.* ¶ 37 (the enterprise's "racket was theft of cryptocurrency by means of SIM swap frauds").  But the FAC nowhere alleges any activity of the enterprise other than engaging in SIM swap hacks.  Instead, it simply provides a litany of bare statements that Pinsky and Truglia engaged in hacking activities beyond the particular facts of the Terpin hack.  *See, e.g.*, *id.* ¶ 58 (alleging that Truglia "was arrested for the theft of $1 million in cryptocurrency holdings owned by someone other than Plaintiff"); ¶¶ 61-62 (alleging that Truglia obtained $60 million through hacking); ¶ 63 (alleging that Pinsky "had stolen between $70 and $80 million through hacking of multiple victims");  ¶ 76 (alleging that Pinsky and "Accomplice A . . . were involved in SIM swaps and hacks other than that of Mr. Terpin" and that "Pinsky had used Accomplice B on numerous occasions and had committed other hacks with Accomplice A"); ¶ 77 ("In 2017 . . . Pinsky was

7

involved in another hack.").  Notably, the bulk of these allegations appear to allege *separate*

conduct by Pinsky and Truglia, respectively.  *See Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*,

No. 15-CV-3784 (PKC), 2016 WL 6110565, at *7 (S.D.N.Y. Aug. 4, 2016) ("[A]llegations of

parallel conduct by individuals alleged to be part of an enterprise are insufficient to support a

RICO enterprise.").  But even if acting in concert, the FAC still fails to allege "that the enterprise

engage[d] in a 'course of fraudulent or illegal conduct separate and distinct from the alleged

predicate racketeering acts themselves.'"  *Bangladesh Bank v. Rizal Commercial Banking Corp.*,

No. 19 Civ. 983 (LGS), 2020 WL 1322275, at *8 (S.D.N.Y. Mar. 20, 2020) (quoting *First

Capital*, 385 F.3d at 174) (complaint alleging hacking and money laundering failed to allege a

separate enterprise where "[t]he alleged illegal purpose of the enterprise was to defraud the

[plaintiff] and then hide and disperse the proceeds").

      With respect to the structure of the purported enterprise, the FAC contains two

paragraphs that describe various roles and responsibilities of the supposed members, but those

paragraphs simply describe the conduct of these members in the single alleged instance of

racketeering activity, namely, the theft of Plaintiff's cryptocurrency.  Paragraph 4 alleges:

> Some members of the Enterprise locate potential targets (preferably
> those, such as Mr. Terpin with large cryptocurrency holdings) and
> obtain information about their victims, such as telephone numbers
> and carriers.  Members of the Enterprise then either impersonate the
> victims or coopt or bribe employees of the carriers to cooperate with
> the theft, forge identity papers for the victims, and then take over the
> victim's mobile telephone.  Once in control of the telephone, Pinsky,
> Truglia and other members of the Enterprise then roam openly
> through files of the victim and access and intercept two factor
> authentication messages until they locate[] information and
> cryptocurrency holdings that allow them to take control of the
> cryptocurrency and exfiltrate such holdings into their own accounts.

*Id.* ¶ 4.  Similarly, paragraph 37 alleges:

> Each of the dozen or more gangsters in the Enterprise had assigned
> roles, including identifying the victims, obtaining their cell phone
> and passcode numbers, impersonating and stealing the identity of

（无）

> the victims, conning or bribing mobile phone carriers' employees in to giving the imposter a new SIM card, and handing off the personal identity information to other members of the Enterprise who executed the hack and laundered the cryptocurrency holdings.

*Id.* ¶ 37. These paragraphs amount to nothing more than a recitation of the alleged racketeering activity, broken up into individual actions and calling those actions "assigned roles." They do not plausibly allege an "ascertainable structure *beyond that inherent* in the pattern of racketeering activity." *Boyle*, 556 U.S. at 940-41 (emphasis added). Rather, they are a description of *how* the racketeering activity was purportedly undertaken.[2]

Further, the FAC does not allege any instance of these "assigned roles" being carried out other than in connection with the alleged theft of Terpin's cryptocurrency. Tellingly, both of the above-quoted paragraphs describe the Terpin hack as being "typical of the way in which the Enterprise operates." *Id.* ¶ 4; *accord id.* ¶ 38 (referring to paragraph 37, "[t]he Enterprise's hack of Mr. Terpin fits this pattern."). In other words, the FAC simply extrapolates from allegations that are specific to Plaintiff and generalizes these to the enterprise's structure, using phrases such as "is typical" and "fits [a] pattern" to bridge the gap to its conclusion: that "Pinsky, Truglia, and others in the Enterprise . . . operated the Enterprise by dividing up their responsibilities." *Id.* ¶ 4. This is classic bootstrapping – an impermissible way to plead the existence of an enterprise. *See United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013) ("[Plaintiff] cannot bootstrap its allegations of

---

[2]    Paragraph 37 also suggests that the chat room in which the participants associated, the "Original Gangsters" or "OGUsers" forum, *is* the RICO enterprise, though elsewhere the FAC indicates that this is simply the online location where the individual members met each other. *Compare* FAC ¶ 37 ("'OGUsers' . . . morphed into the nucleus of a sophisticated criminal enterprise.") *with id.* ¶ 5 ("It is believed that Pinsky met other members of the Enterprise in a chat room called the 'Original Gangsters' or 'OGUsers Forum.'"). The FAC lacks any additional allegations to suggest that OGUsers is an enterprise with an ascertainable structure, goal, or activities, and in any event, the notion that the location (whether physical or online) where co-conspirators met is the enterprise is nonsensical – akin to charging the Ravenite Social Club, rather than the Gambino Family, with RICO.

illegal conduct into allegations that [defendants] conducted the affairs of an enterprise by asking us to infer that because the activities were illegal, they therefore must also have been coordinated activity undertaken on behalf of" an enterprise); *see also Feinberg v. Katz*, No. 99 CIV. 45 (CSH), 2002 WL 1751135, at *16 (S.D.N.Y. July 26, 2002) (allegations that defendant "regularly and systematically" committed unlawful acts failed to plausibly allege existence of a distinct enterprise). Stripped of its circular logic, the FAC offers only "legal conclusions without factual support to demonstrate the existence of an ongoing organization." *101 McMurray, LLC v. Porter*, No. 10-cv-9037 (CS), 2012 WL 997001, at *7 (S.D.N.Y. Mar. 26, 2012) (internal quotation marks omitted). It thus fails plausibly to allege the existence of an enterprise.

### b. The FAC Fails to Allege Longevity Sufficient to Meet the Structural Requirements of an Enterprise

Even assuming that the foregoing allegations were sufficient to establish the purpose of the enterprise and the relationships among those associated with it, the FAC nevertheless fails to plausibly allege the third structural component, *i.e.*, "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 941. In a chart at paragraph 38, the FAC alleges activities of the enterprise that took place over a few days – January 7-11, 2018 – with several activities, including dividing and spending the proceeds, all alleged (without specificity) to have taken place "[a]fter January 11, 2018." FAC ¶ 38. These allegations of distribution and spending of the proceeds do not extend the alleged criminal activity beyond the five days specifically described in the FAC. *See Mgmt. Comput. Servs. v. Hawkins, Ash, Baptie & Co.*, 883 F.2d 48, 51 (7th Cir. 1989) ("When a thief steals $100, the law does not hold him to a new theft each time he spends one of those dollars. . . . [S]ubsequent and varied uses of the stolen [goods] would not constitute new offenses but would go only to the issue of damages."). Accordingly, the FAC alleges activity of the supposed enterprise lasting only a few days.

Even if the FAC could be read to extend the activity for several weeks or months, this

10

would still be insufficient to meet the longevity requirement.  In *Boyle*, for example, the "core group" operated for at least *nine years*, committing more than *thirty-two* bank burglaries.  556 U.S. at 941.  Courts have upheld allegations of RICO enterprises extending over similarly long periods of time.  *See, e.g.*, *United States v. King*, 910 F.3d 320, 327 (7th Cir. 2018) ("gang had a sustained hierarchy that persisted over a ten-year period"); *United States v. Harris*, 695 F.3d 1125, 1136 (10th Cir. 2012) ("As to 'longevity,' the record showed that the pattern of activity that the government alleged continued over a period of years."); *United States v. Cooper*, 343 F. App'x 830, 832 (3d Cir. 2009) (longevity requirement met where government introduced evidence that street crew "conducted its activities throughout a period spanning approximately six years"); *United States v. Dixon*, 167 F. App'x 841, 843-44 (2d Cir. 2006) (in pre-*Boyle* case, enterprise element satisfied where association had "a core membership that remained constant over a twelve-year period").  The brief conduct alleged here fails to create an inference of longevity sufficient to meet the definition of an enterprise.

The FAC attempts to compensate for the absence of longevity by alleging that Pinsky "has been a cyber-criminal since age 13," FAC ¶ 1, and stating, based on that allegation, that "the *Enterprise* began its criminal exploits when Pinsky was only 13 (several years before Plaintiff's SIM swap)."[3]  *Id.* ¶ 8 (emphasis added).  But the alleged conduct of *Pinsky* does not equate to the conduct of the enterprise.  *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) ("[T]o establish liability under § 1962(c) one must allege and prove the

---

[3]     Likely anticipating an argument that a period of two years – from when Defendant was thirteen to when the Terpin hack occurred when Defendant was fifteen – is insufficient for continuity purposes under the pattern element, the FAC amends the Complaint's prior acknowledgement that Pinsky was fifteen at the time to allege now that he was "15-going-on-16."  *Id.* ¶ 1.  But the FAC contains no specific factual allegation as to the timing of any hack that purportedly occurred when Pinsky was thirteen, let alone any details of the particulars of such incident.  Accordingly, at most the FAC alleges (though, again, without specificity) that Pinsky was engaged in hacking for a two-year period between the ages of thirteen and fifteen.

existence of two distinct entities: (1) a 'person''; and (2) an 'enterprise' that is not simply the

same 'person' referred to by a different name.''); *Reves v. Ernst & Young*, 507 U.S. 170, 185

(1993) (RICO "liability depends on showing that the defendants conducted or participated in the

conduct of the '*enterprise's* affairs,' not just their *own* affairs.").  Thus, even if the FAC

plausibly alleges that Pinsky's conduct extended over two years (which it does not), that would

not establish sufficient longevity of the *enterprise*.

> c.   The FAC Alleges a Criminal Conspiracy, But a Conspiracy Without
>      More Is Not an Enterprise

Finally, the FAC makes much of its allegation that Pinsky and Truglia were "partner[s]."

FAC ¶ 61.  In so doing, it seeks to expand Pinsky's liability to conduct that the FAC alleges was

undertaken solely by Truglia, and *vice versa*.  To be sure, the FAC alleges that Truglia was

arrested in November 2018 for a separate $1 million cryptocurrency hack, *id.* ¶ 58, has

committed other crimes such as tax fraud, *id.* ¶ 61, and confessed to police that he has stolen $60

million, *id.* ¶ 63.  The FAC also recounts Truglia's admissions of his involvement in the theft of

Terpin's cryptocurrency, *id.* ¶ 64, and notes that the federal government has "indicted Truglia for

stealing Plaintiff's cryptocurrency," *id.* ¶ 3 – an indictment in which the government charged

Truglia with wire fraud conspiracy and money laundering conspiracy, and *not* with RICO.  *See*

*supra* n.1.[4]  But even assuming the truth of the allegation that Pinsky and Truglia were co-

conspirators in criminal conduct beyond the Terpin hack, a conspiracy – even a continuing one –

does not an enterprise make.  If it did, then "'any two thieves in cahoots would constitute an

---

[4]      The Court may take judicial notice of the filings in Truglia's criminal case, as well as
other matters relevant to this case.  *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).  The
Court may take judicial notice of the fact, for example, that to buttress his claim for treble
damages, Plaintiff misleadingly states that "a Los Angeles County Superior Court Judge assessed
such treble damages against Truglia for his participation in the theft of Plaintiff's
cryptocurrency," FAC ¶ 99, when in fact that award was obtained by a default judgment.  *See*
Decl. of Noam Biale, dated October 2, 2020, Ex. A (Docket, *Terpin v. Truglia*, No.
18STCV09875 (L.A. Cty. Super. Ct. 2018)).

enterprise-in-fact.'"  *Foster v. 2001 Real Estate*, No. 14 CIV. 9434 (RWS), 2015 WL 7587360,

at *4 (S.D.N.Y. Nov. 24, 2015) (quoting *Greenberg v. Blake*, No. 09CIV.4347 (BMC), 2010 WL

2400064, at *7 (E.D.N.Y. June 10, 2010)).  Simply alleging that Pinsky and Truglia (and any of

the other unnamed "Accomplices") conspired together to engage in hacking "fall[s] short of

alleging that the conspirators formed and organized *a separate entity* (whether formal or

informal) on whose behalf they acted; it is not enough if they merely acted together to commit

the wrong."  *Id.* (emphasis added) (internal quotation marks omitted).  Moreover, the FAC

acknowledges that Pinsky, Truglia, and the "Accomplices" operated separately, but states that

the enterprise here is "consistent with a classic hub-and-spoke[s] criminal enterprise model in

which persons such as Pinsky and other ringleaders are at the hub of [a] wheel and control

numerous spokes of other co-conspirators."  FAC ¶ 74.  But, since *Boyle*, "the majority of courts

within this Circuit have found the 'hub-and-spokes' associations alleged in the complaints before

them were insufficient to constitute a RICO enterprise."  *Gucci Am., Inc.*, 2016 WL 6110565, at

*5-*6 (citing cases).  Thus, the FAC fails to plausibly allege a RICO enterprise distinct from the

persons involved or from the alleged pattern of racketeering activity.

>           **2.**      **The FAC Fails to Allege a Continuing Pattern of Racketeering
>                        Activity**

Assuming *arguendo* that the FAC plausibly alleges an enterprise, the RICO claim fails

for an independent reason: The FAC fails to plausibly allege that the enterprise engaged in a

continuing pattern of racketeering activity.  To establish a pattern sufficient to impose liability

under RICO, a plaintiff must make a showing that the predicate acts are "related, and that they

amount to or pose a threat of continued criminal activity."  *H.J., Inc. v. Northwestern Bell Tel.

Co.*, 492 U.S. 229, 239 (1989).  To establish continuity, a plaintiff must establish the "predicates

themselves amount to, or that they otherwise constitute a threat of, continuing racketeering

activity."  *Id.* at 240.  Continuity "is both a closed- and open-ended concept, referring either to a

closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241.

To satisfy closed-ended continuity, a plaintiff must prove "a series of related predicates extending over a substantial period of time." *Id.* at 242. Since the Supreme Court decided *H.J.*, the Second Circuit has never held less than two years to constitute a "substantial period of time." *See GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 467 (2d Cir. 1995). While "closed-ended continuity is primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant." *DeFalco*, 244 F.3d at 321. The "duration of a pattern of racketeering activity is measured by the RICO predicate acts the defendants commit." *Id.*

An open-ended pattern of racketeering activity exists when a plaintiff can establish "past criminal conduct coupled with a threat of future criminal conduct." *GICC Capital Corp.*, 67 F.3d at 466. With respect to the threat of future conduct, "in cases where the acts of the defendant or the enterprise were inherently unlawful . . . and were in pursuit of inherently unlawful goals," courts may find "that the requisite threat of continuity was adequately established by the nature of the activity, even though the period spanned by the racketeering acts was short." *United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995). But allegations of unlawful conduct alone are not sufficient to establish the requisite threat of continuity. Where the defendant allegedly engaged in fraud or theft but where such conduct was "*inherently* terminable" once completed (*i.e.*, once the defendant had obtained the plaintiff's money), *GICC Capital Corp*, 67 F. 3d at 466., the mere risk of recurrence does not constitute a threat of open-ended continuity. *See, e.g.*, *Cont'l Realty Corp. v. J.C. Penney Co.*, 729 F. Supp. 1452, 1454 (S.D.N.Y. 1990) (acts of mail and wire fraud over a period of more than one year did not establish continuity where acts had a single goal, single victim, and there were no allegations

14

indicating a likelihood of future unlawful activity); *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 371 (E.D.N.Y. 2002) (mail, wire and bank fraud committed in connection with the isolated sale of one product had a "natural end" and therefore no threat of continuity).

Here, the FAC fails to plausibly allege a pattern of racketeering activity with either closed-ended or open-ended continuity.  The claim of a closed-ended pattern fails because the FAC alleges predicate acts extending over, at most, a period of days, during which the enterprise allegedly obtained Terpin's cryptocurrency through fraud, laundered the proceeds, and extorted a member of the enterprise who failed to convert the cryptocurrency as directed.  The FAC attempts to expand this five-day period into two years (or slightly more) by alleging that Pinsky has been a cybercriminal since age thirteen, has committed other hacks, and has boasted of having vast wealth (which the FAC construes as boasting of profiting from hacking).  These claims fail to establish closed-ended continuity for two reasons.  *First*, "hacking" is not a RICO predicate, and thus the FAC at most alleges a pattern of *crimes*, not of *racketeering activity*. *Second*, even assuming these other "hacks" would constitute wire fraud if proved, the allegations are not pled with the requisite particularity under Rule 9(b).  The FAC also fails to allege open-ended continuity because, as alleged, the scheme to obtain Plaintiff's cryptocurrency was a single course of conduct with one victim, was inherently terminable, and, despite more than two and a half years passing between the Terpin hack and the filing of the FAC, Plaintiff does not allege a single predicate act occurring after the hack and division of its proceeds were complete.

Thus, while the FAC alleges a scheme directed at Plaintiff to steal cryptocurrency through various crimes that are RICO predicates, it fails to allege the requisite *continuing* pattern of racketeering activity.  *See Evercrete Corp. v. H–Cap Ltd.*, 429 F. Supp. 2d 612, 624-25 (S.D.N.Y. 2006) ("Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the

RICO requirement of a closed or open pattern of continuity.")

a.   The FAC Fails to Allege a Closed-Ended Pattern

Because the events alleged to constitute the theft, laundering, and division of Plaintiff's

cryptocurrency took place over a matter of days, the FAC strains to establish a continuous

pattern of racketeering activity by pointing to other incidents supposedly involving other victims.

Thus, no less than ten paragraphs of the FAC are devoted to making the case that, since Pinsky

was thirteen years old, he has repeatedly "stole[n]" from others "through hacking," and is a

"professional thief."  FAC ¶ 63.[5]  As noted above, *supra* at 11 n.3, even assuming these

allegations are sufficient to allege racketeering activity by Pinsky going back to age thirteen, that

still does not exceed the two-year period that the Second Circuit has held is the minimum.[6]  But

even assuming a two-year period were sufficient or that the FAC alleges a period of slightly over

---

[5]      *See id.* ¶ 1 (Pinsky "has been a cyber-criminal since age 13 and has claimed to have
stolen over $100 million in cryptocurrency from numerous victims"); ¶ 2 ("In his early
teens . . . [Defendant] began hacking computers"); ¶ 7 ("The financial crimes of Pinsky, Truglia,
and their confederates in hacking others"); ¶ 12 (Pinsky "think[s] nothing of stealing millions");
¶ 57 ("organizing and directing scores of SIM swaps and thefts"); ¶ 63 ("Pinsky had stolen
between $70 and $80 million through hacking"); ¶ 65 ("[Pinsky] has told friends that, since he
was 13, he has stolen over $100 million worth of cryptocurrency through scores of hacks."); ¶ 76
("[Truglia] stated that Pinsky engaged in hacks 'all of the time.'"); *id.* (Pinsky "committed other
hacks with Accomplice A."); ¶ 77 ("In 2017, . . . Pinsky was involved in another hack [which]
involved the theft of more than was taken from Mr. Terpin."); ¶ 91 ("Pinsky himself was
engaged in hacks since he was 13, . . . either he engaged in a major hack, such as the one alleged
in Paragraphs 75-77, or numerous smaller hacks, which is consistent with Truglia's statement to
Chris David after Mr. Terpin's hack that Pinsky did hacks 'all the time'").

[6]      The FAC tries to extend the relevant period backward in time by such phrasing as, "*If not
before*, the Enterprise began its criminal exploits when Pinsky was only 13.  FAC ¶ 8 (emphasis
added).  Courts have rejected this kind of attempt to expand the duration through hypothetical
pleading.  *See, e.g.*, *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 97-98
(S.D.N.Y. 1993) (dismissing RICO claim where plaintiff alleged that conduct occurred "at
various times as early as 1985, and possibly earlier").  And the FAC attempts to extend the
conduct forward by alleging that in 2019, Accomplice C advised Individual X "that everyone
was to get 'the story straight'" and blame Truglia alone for the hack.  FAC ¶ 74.  But courts have
held that "Defendants' fraudulently concealing their illegal activities for a number of years is
inadequate to satisfy the continuity requirement of the RICO statute."  *Bangladesh Bank*, 2020
WL 132275, at *7 (alteration and internal quotation marks omitted).

16

two years, Plaintiff's claim of a closed-ended pattern nevertheless runs aground for two reasons.

*First*, claims of serial thefts "through hacking," without more, do not establish the RICO claim because "[o]rdinary theft offenses and conspiracies to commit them are not among the predicate activities defined in 18 U.S.C. § 1961(1)." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). For closed-ended continuity, "the duration of a pattern of racketeering activity is measured by the *RICO predicate acts* the defendants commit." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 243 (2d Cir. 1999) (emphasis added); *see also Spool*, 520 F.3d at 184 ("The relevant period . . . is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated."). Thus, the FAC's repeated allegations that Pinsky stole millions do not advance an allegation of continuous racketeering activity. That the FAC alleges such theft was accomplished "through hacking," even through "scores of hacks," FAC ¶¶ 63, 65, is of no moment. "Hacking" is not a RICO predicate, nor is the federal statute that criminalizes hacking, the CFAA. *See* 18 U.S.C. § 1961(1); *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012) ("Congress enacted the CFAA in 1984 primarily to address the growing problem of computer hacking.").[7] The FAC's numerous (and vague) references to other incidents of "hacking" do not allege a pattern of racketeering activity as that term is defined in the RICO statute.

*Second*, the FAC attempts to compensate for this deficiency by alleging that these other "hacks" were accomplished by means of SIM swaps, but it fails to allege facts to support that conclusion under the relevant pleading standard. *See, e.g.*, FAC ¶ 61 ("Pinsky has been identified as Truglia's partner in multiple SIM swap frauds."); ¶ 76 ("Pinsky and Accomplice A,

---

[7]   Indeed, Congress has recently debated adding the CFAA as a predicate act to the RICO statute, particularly in response to high-profile incidents of hacking, but that proposal has so far been rejected. *See* W. Joseph Salvador, *Dismantling the Internet Mafia: Rico's Applicability to Cyber Crime*, 41 Rutgers Computer & Tech. L.J. 268, 294-96 (2015).

who were apparent leaders of the Enterprise, were involved in SIM swaps and hacks other than that of Mr. Terpin.").[8]   The FAC is completely lacking in specific factual allegations to support its claim that Pinsky, the supposed enterprise, or anyone else engaged in other SIM swap hacks besides the Terpin hack.   Instead, as it does with the enterprise element, it attempts to bootstrap from the theft of Terpin's cryptocurrency to posit that the supposed other hacks *must* have been accomplished through SIM swaps.   *See, e.g.*, *id.* ¶ 10 ("[T]he efficient, precise and coordinated manner in which the Enterprise carried out the SIM swap of Mr. Terpin demonstrated an expertise in Pinsky and his accomplices that could only have been obtained with practice and numerous heists over an extended and lengthy period of time.").

But even assuming that the other hacks variously alleged throughout the FAC *were* conducted through SIM swaps, and thus arguably could constitute wire fraud, the FAC is still "legally insufficient" because these allegations "have not been pled with the requisite particularity."  *Spool*, 520 F.3d at 185.   "[A]ll allegations of fraudulent predicate acts[] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."  *First Capital Asset Mgmt.*, 385 F.3d at 178; *accord 101 McMurray LLC*, 2012 WL 997001, at *8 ("[F]or a civil RICO claim such as this one, where the alleged predicate acts are frauds, a plaintiff must plead these acts with particularity under Federal Rule of Civil Procedure 9(b).").  Allegations of other acts of wire fraud "should state the contents of the communications, who

---

[8]      These and other allegations regarding incidents beyond the Terpin hack are generally pled "on information and belief."  *See, e.g.*, FAC ¶¶ 75, 92, 94.  While such pleading is permissible after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), where "the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal citation omitted), here, as in *Twombly*, the basis for an *element* of the claim (*i.e.,* the pattern) is pleaded entirely on information and belief or based on legal conclusions.  *See id.* (in *Twombly*, Supreme Court held that "conclusory allegation on information and belief that the observed conduct was the product of an unlawful agreement was insufficient to make the claim plausible").

was involved, [and] where and when they took place, and [should] explain why they were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993). The FAC is devoid of such particularized allegations. Instead, it repeatedly states versions of the same general allegation, that "the Enterprise perpetrated criminal acts on numerous victims other than Mr. Terpin," FAC ¶ 10, without any detail on the contents of the communications, who was involved, where and when they took place, or the nature of the purportedly fraudulent statements. The closest the FAC comes to detailing other incidents is in paragraph 12, which alleges, "As one of many examples, one victim lost all the money set aside for his daughter's college education," *id* ¶ 12, and paragraph 77, which alleges, "In 2017, and prior to the hack of Terpin, Pinsky was involved in another hack, the specific identity of which has previously been provided to counsel for Pinsky," *id.* ¶ 77. The former paragraph provides no information other than stating the alleged loss; the latter does not include any particularized allegation of fraud, and thus, too, fails to meet the requirements of Rule 9(b).[9]

In *Broidy Capital Management LLC v. Muzin*, the U.S. District Court for the District of Columbia recently addressed a similar set of allegations. No. 19-cv-0150 (DLF), 2020 WL 1536350 (D.D.C. Mar. 31, 2020). There, plaintiffs sued a group of Qatari agents who had allegedly hacked computers and disseminated private information in violation of RICO. *Id.* at *1. The complaint detailed this scheme, alleging the hacking of several victims. *Id.* at *10.

---

[9]    As a pleading standard, stating that the specifics have been separately "provided to counsel" does not give the Court any basis to evaluate the legal sufficiency of the allegation. Although outside the four corners of the FAC, the hack Plaintiff refers to the December 2017 hack of Nicehash, a Slovenian Bitcoin exchange. *See* Lubomir Tassev, *Nicehash Returns 60% of Bitcoin Stolen in the Hack*, Bitcoin.com, Aug. 27, 2018, https://news.bitcoin.com/nicehash-returns-60-of-coins-stolen-in-the-hack/. Defendant has no knowledge as to how that hack was conducted beyond what is contained in press reports because he has no involvement in it whatsoever. In any event, the details of that hack are of no moment because it took place only a month before the Terpin hack, and thus even if attributable to the enterprise alleged here, it does not extend the pattern of racketeering sufficiently to meet RICO's continuity requirement.

Like the FAC here, the complaint "allude[d] to other victims," contending that the alleged enterprise "committed wire fraud by targeting more than 1,400 email addresses." *Id.* (internal quotation marks omitted).  The district court held this allegation failed to plausibly allege a pattern of racketeering activity because it was not pled with sufficient particularity for a fraud claim.  As the court stated, the allegation that there were other victims of hacking was "not nearly specific enough to satisfy Rule 9(b)—it does not specify the consequence of the fraud or the time, place, or the content of the misrepresentation." *Id.*  The court accordingly held that the complaint failed plausibly to allege a continuous pattern of racketeering activity.

So, too, here.  The FAC vaguely references other hacks, suggests exclusively based on the alleged facts of the Terpin theft that those hacks *must have* involved SIM swaps, but provides none of the particular allegations necessary to make out a fraud claim.  The FAC's repeated reference to Pinsky's alleged statement that he has $100 million is even less persuasive in supporting its claim of a pattern.  *See, e.g.*, FAC ¶¶ 14, 17, 65.  Putting aside whether the grandiloquent boast of a teenage boy is a plausible basis to believe the truth of the statement, the allegation is relevant only insofar as one *assumes* Pinsky obtained his money through unlawful means, and one then *further assumes* those unlawful means are RICO predicates.  And, to the extent Plaintiff's claim is that Pinsky obtained $100 million through *fraud*, he fails to plead any such fraud with particularity.  "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) (internal quotation marks omitted).  The FAC fails to plausibly allege any conduct beyond that directly tied to the Terpin hack to establish a closed-ended pattern of racketeering activity.

b.      The FAC Fails to Allege an Open-Ended Pattern

Having failed to allege predicate acts occurring over a duration sufficient to constitute

closed-ended continuity, the FAC alleges that the threat of future predicate acts establishes open-

ended continuity.  Notably, the FAC does not allege a single predicate act occurring *after* the

scheme to obtain, monetize, and distribute Plaintiff's cryptocurrency was completed, despite

more than two and a half years having passed between that incident and the filing of the FAC.

There is no well-pleaded factual allegation to support a claim of any ongoing threat.  Instead, the

FAC relies on a legal conclusion:  "Given the inherently unlawful nature of the

Enterprise, . . . the risk of continuity of the Enterprise is deemed established under applicable

Second Circuit law."  FAC ¶ 11 (citing *Aulicino*, 44 F.3d at 1111 and *GICC Capital Corp.*, 67

F.3d at 466).  Even assuming that stating such a conclusion is adequate at the pleading stage, the

FAC misconstrues the precedents it cites.  Contrary to Plaintiff's assertion, the law is clear that

an allegation of unlawful conduct is not a talisman to establish open-ended continuity.

In *H.J.*, the Supreme Court stated, "the threat of continuity is sufficiently established

where the predicates can be attributed to a defendant operating as part of a *long-term association*

*that exists for criminal purposes*."  492 U.S. at 242-43 (emphasis added).  The Court noted that

"Congress was concerned in RICO with long-term criminal conduct," but "[o]ften a RICO action

will be brought before continuity can be established in this way.  In such cases, liability depends

on whether the threat of continuity is demonstrated."  *Id.* at 241-42.  Although the Court held that

the pattern element did not require a plaintiff to prove that the defendant engaged in more than

one scheme, it did not explain what precisely the contours were of "past conduct that by its

nature projects into the future with a threat of repetition."  *Id.* at 241.

In *United States v. Aulicino*, the Second Circuit applied the "threat of repetition" concept

from *H.J.*  44 F.3d at 1111.  *Aulicino* involved a criminal RICO charge arising out of a kidnaping

ring that targeted narcotics dealers.  *Id.* at 1105.  The evidence at trial established that over a

three-and-a-half-month period, the crew attempted seven kidnappings, with varying degrees of

success, and that the defendants discussed plans for an additional kidnapping prior to arrest.  *Id.*

at 1105-06, 1114.  The defendants argued on appeal that the short duration of the scheme was

insufficient for a RICO pattern.  *Id.* at 1110.  The Second Circuit rejected that challenge.

Surveying prior decisions, the court noted that

> in cases where the acts of the defendant or the enterprise were
> inherently unlawful, such as murder or obstruction of justice, and
> were in pursuit of inherently unlawful goals, such as narcotics
> trafficking or embezzlement, the courts have generally concluded
> that the requisite threat of continuity was adequately established by
> the nature of the activity, even though the period spanned by the
> racketeering activity was short.

*Id.* at 1111.  The court cited decisions in which a pattern was established through *multiple*

predicate acts against *multiple* victims, and where the predicate acts were undertaken on behalf

of an entity whose business was racketeering activity.  *See id.* at 1111-12 (citing *United States v.*

*Simmons*, 923 F.2d 934, 951 (2d Cir. 1991) (three murders occurring over nine months); *United*

*States v. Coiro*, 922 F.2d 1008, 1017 (2d Cir. 1991) ("numerous activities involving bribery and

money laundering on behalf of organized crime"); *United States v. Indelicato*, 865 F.2d 1370,

1383-83 (2d Cir. 1989) (en banc) (three murders to effect change of leadership in organized

crime family)).  As to the conduct at issue in *Aulicino*, the Circuit held:

> [T]here was nothing isolated or sporadic about the acts of
> racketeering performed by the enterprise in the present case.  There
> was evidence that the ring drew up a list of 10 kidnaping targets.
> The ring planned to abduct its victims seriatim and aspired to
> ransoms of $1 million per victim.  They used proceeds from their
> successful kidnaping to buy and customize vehicles for the
> kidnapings to follow.  The very plan to undertake a series of
> inherently unlawful and interrelated racketeering acts is instinct with
> the threat of continuity.

*Id.* at 1113 (emphasis added); *see also id.* at 1114 ("The jury could easily find the threat of

continued criminal activity from the evidence that the ring made an average of one kidnaping attempt every two weeks for 14 weeks, made repeated extortion attempts where the kidnappings had failed to extract ransoms, and had not exhausted its list of kidnaping targets.").

By contrast, here, the FAC alleges several predicate acts all committed in the course of a single scheme, undertaken against one victim, which terminated upon the distribution of proceeds from the hack of Plaintiff's cryptocurrency. Such allegations, which at most suggest a *possible* risk of repetition, but provide no facts as to the nature of the conduct from which the likelihood of repetition could be plausibly inferred, have been held insufficient to establish open-ended continuity.[10]  *See Spool*, 520 F.3d at 186 ("[T]he amended complaint alleges only 'a serious, but discrete and relatively short-lived scheme to defraud a handful of victims,' which is insufficient to establish open-ended continuity." (quoting *Cofacredit*, 187 F.3d at 244)).

For example, in *International Brotherhood of Teamsters v. Carey*, Judge Swain considered open-ended continuity in a case alleging an enterprise which sought, among other goals, "the enrichment of Defendants through embezzlement and mail and wire fraud." 297 F. Supp. 2d 706, 712 (S.D.N.Y. 2004). The complaint included allegations that the fraudulent enrichment "would have continued if undetected" and an ongoing threat existed "because of defendant's positions and relationships" with the plaintiff union. *Id.* Finally, the complaint noted that several members of the alleged enterprise had been "convicted of predicate acts of racketeering." *Id.* at 715. Nonetheless, the court found that the allegations failed to establish that the scheme was "'inherently unlawful' in the *Aulicino* sense." *Id.* The court noted that

---

[10]     The FAC contains only one stray sentence suggesting an inference that the enterprise poses an ongoing threat, stating "Pinsky[] is constantly reaching out for the support of equally callous offenders who think nothing of stealing millions from their victims." FAC ¶ 12. The vague and conclusory nature of the sentence, and the fact that, without explanation, it simply shifts other allegations of past conduct into the present tense, is a conspicuous indicator of the absence of well-pleaded factual allegations concerning any ongoing threat.

23

while "[i]t is of course a truism that criminal conduct is inherently unlawful," the examples

provided in *Aulicino* and *H.J.* made clear that "simple unlawfulness of past activity is not

sufficient to embody the requisite specific threat of future criminal activity." *Id.* Rather, "such

acts must (like protection or shakedown schemes) *threaten repetition by their nature*, or (like

killings to maintain discipline in a narcotics operation or bribery and money laundering on behalf

of organized crime) have been undertaken in pursuit of some *ongoing* illegal goal." *Id.*

(emphasis added). The court observed that the goals of self-enrichment and depriving the

plaintiff of money were not "inherently unlawful" in that sense, and that "fraud (the object of

which is by definition to obtain money or property from others) has been held not to be

'inherently unlawful' in the RICO continuity context." *Id.* (citing *FD Prop. Holding, Inc.*, 206 F.

Supp. 2d at 371). The court also rejected the plaintiff's claim that the defendants constituted an

association-in-fact enterprise whose business "was to engage in criminal activity," because even

assuming the factual allegations established an enterprise, they did not support an inference that

"the enterprise was an *ongoing* one that would, absent discovery of the . . . fraud, have continued

to engage in criminal activity." *Id.* at 716. Rather, the allegations suggested criminal activity

that would terminate at its conclusion, and the "mere risk that there could be a recurrence" was a

hypothetical possibility insufficient to establish open-ended continuity. *Id.*

Similarly here, the FAC alleges an association-in-fact enterprise that engaged in criminal

conduct. The goal of that conduct, as alleged, was to obtain, monetize, and distribute Plaintiff's

cryptocurrency. That conduct, while unlawful, was not "inherently unlawful" in the sense that it

implies repetition by its nature. Rather, it is the kind of single-victim misconduct that courts in

the Second Circuit have routinely held terminates once it is completed, and therefore does not by

its nature risk repetition. *See, e.g., Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 79

(E.D.N.Y. 2020) (open-ended continuity not established where multiple acts were directed at

24

single victim, "carried out by a handful of participants for [a] singular purpose" and therefore "were not the 'multi-faceted scheme' required to establish continuity"); *Morris v. Zimmer*, No. 10 CV 4146(VB), 2011 WL 5533339, at *11 (S.D.N.Y. Nov. 10, 2011) (holding no pattern alleged where "[t]here is one main fraudulent act" and the "other acts complained of all flow from that main fraud against plaintiffs"); *Shamis v. Ambassador Factors Corp.*, No. 95 CIV. 9818 (RWS), 1997 WL 473577, at *16-17 (S.D.N.Y. Aug. 18, 1997) (no open-ended continuity where alleged wrongdoing revolved around a single act, a limited number of perpetrators were involved, there was only one target of the scheme, and a discrete, limited goal). As in these cases, "[t]here was no open-ended continuity here. The alleged fraud involved was designed to extract money from the Plaintiff. Given this limited goal, the scheme was inherently terminable." *Dempsey v. Sanders*, 132 F. Supp. 2d 222, 228 (S.D.N.Y. 2001); *accord Broidy Capital Mgmt.*, 2020 WL 1536350, a *9 ("[T]he Complaint here alleges nothing suggesting any reason to expect that these defendants, together or separately, will again engage in RICO-violating conduct. The alleged hacking already has happened." (internal quotation marks and citation omitted)); *Bangladesh Bank*, 2020 WL 1322275, at *7 (holding that, where foreign hackers' "scheme was to steal the Bank's money from a particular account on one evening and then launder it," the "alleged crimes do not project into the future by their nature").[11]

---

[11]     The FAC suggests another reason the alleged conduct may be terminable and unlikely to repeat: As alleged, Pinksy was a fifteen-year-old child during the hack of Plaintiff's cryptocurrency and the alleged extortionate threats made to a teenage associate. At most he was sixteen when he allegedly boasted about his great wealth. He is now an adult and is attending college. *See* FAC ¶ 2. This context indicates that the alleged conduct is likely more the result of "impetuous and ill-considered actions and decisions" rather than a sophisticated, ongoing pattern of criminality. *Roper v. Simmons*, 543 U.S. 551, 569 (2005) ("[A]s any parent knows and as the scientific and sociological studies respondent . . . confirm, a lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults." (internal quotation marks and alteration omitted)).

Accordingly, the FAC fails to plausibly allege a continuous pattern of racketeering activity.  The RICO claim should be dismissed.

**B.     THE COMMON LAW CLAIMS ARE TIME-BARRED**

**1.     Under the New York Borrowing Statute, Puerto Rico Law Governs the Statute of Limitations for the Common Law Claims**

A federal court sitting in diversity applies the applicable state law to determine the statute of limitations for common law claims.  *See Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002).  To determine which state's law applies, the federal court applies the conflict-of-law rules of the state in which the federal court sits.  *Id.* at 710.  Under New York law, "[w]hen a nonresident sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction where the cause of action accrued."  *Glob. Fin. Corp. v. Triarc Corp*., 715 N.E.2d 482, 484 (N.Y. 1999).  To determine the location of accrual, New York courts "have consistently employed the traditional definition of accrual—a cause of action accrues at the time and in the place of the injury—in tort cases involving the interpretation of CPLR 202."  *Id.* at 485; *accord Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC*, 140 N.E.3d 511, 518 (N.Y. 2019) ("We reaffirm that a cause of action accrues at the time and in the place of the injury." (internal quotation marks omitted)).  "When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss."  *Glob. Fin. Corp*., 715 N.E.2d at 485.  Actions for conversion, replevin (that do not involve specific physical property), and money had and received are all economic injuries, and thus accrue where the plaintiff resides.  *See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A*., No. 93 CIV. 6876 (LMM), 2001 WL 492363, at \*1 (S.D.N.Y. May 9, 2001) (conversion); *In re Estate of McLaughlin*, 910 N.Y.S.2d 252, 254 (N.Y. App. Div. Nov. 4, 2010) (replevin); *Petroholding Dominicana, Ltd. v.*

*Gordon*, No. 18 CIV. 1497 (KPF), 2019 WL 2343658, at *4–5 (S.D.N.Y. June 3, 2019) (money

had and received).  The injury here, which is the deprivation of Plaintiff's cryptocurrency, is

purely economic in nature.  *See United States v. Faiella*, 39 F. Supp. 3d 544, 545 (S.D.N.Y.

2014) ("Bitcoin clearly qualifies as 'money' or 'funds' under . . . plain meaning definitions.").

        Given that the site of injury is where Plaintiff resides and felt the injury, the statute of

limitations under Puerto Rico law applies.  Plaintiff alleges that he is a resident of California,

Puerto Rico, and Nevada.  FAC ¶ 22.  While a party can have more than one residence, *see* N.Y.

CPLR § 503(a), courts applying the borrowing statute apply "the *shorter* of whichever state

wherein the cause of action accrued." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 410

(S.D.N.Y. 2010) (emphasis added).  Puerto Rico law provides a one-year statute of limitations

for the claims here.  *See Barreto Peat, Inc. v. Luis A. Ayala Colon Sucrs., Inc*., 709 F. Supp. 321,

323 (D.P.R. 1989) (citing 31 L.P.R.A. § 5298).[12]  California and Nevada, by contrast, both apply

a three-year statute of limitations for actions to recover personal property, Cal. Civ. Proc. Code

§ 338; Nev. Rev. Stat. Ann. § 11.190.  While it is not clear how New York's conflict-of-law

rules regard a conflict between the statute of limitations in multiple states *other than* New York,

the underlying purpose of New York's borrowing statute is to "guard[] against forum shopping

by out-of-state plaintiffs by mandating use of the *shortest* statute of limitations available." *In re

Coudert Bros. LLP*, 673 F.3d 180, 190 (2d Cir. 2012); *accord Ins. Co. of N. Am. v. ABB Power

Generation, Inc.*, 690 N.E.2d 1249, 1252–53 (N.Y. 1997) ("CPLR 202 requires that a court,

---

[12]        While the Puerto Rico limitations statute specifically references conversion and replevin,
31 L.P.R.A. §§ 5298(1), (2), Puerto Rico law does not recognize a cause of action for money had
and received.  But because that claim is duplicative of the conversion and replevin claims, the
same statute of limitations applies.  *See Kapernekas v. Brandhorst*, 638 F. Supp. 2d 426, 428-29
(S.D.N.Y. 2009); *see also Green Bus Lines, Inc. v. Gen. Motors Corp.*, 565 N.Y.S.2d 124, 125
(N.Y. App. Div. 1991) ("In applying the Statute of Limitations, courts must look to the essence
of the claim, and not to the form in which it is pleaded.").

when presented with a cause of action accruing outside New York, should apply the limitation period of the foreign jurisdiction if it bars the claim."). "[W]here the place of accrual under CPLR 202 cannot be determined . . . the shorter of the two states' statutes of limitations will apply." *Allen v. Handszer*, 560 N.Y.S.2d 593, 600 (N.Y. Sup. Ct. 1990). Thus, Puerto Rico's one-year statute of limitations applies.[13]

Under Puerto Rico law, the "statute of limitations begins to run at the time a reasonably diligent person would discover sufficient facts to allow her to realize that she'd been injured and to identify the party responsible for that injury." *Rojas-Buscaglia v. Taburno-Vasarhelyi*, 199 F. Supp. 3d 520, 545 (D.P.R. 2016) (internal quotation marks omitted). The FAC alleges that Terpin learned of Pinsky's alleged involvement in the hack of his cryptocurrency in "late December 2018." FAC ¶ 78. Thus, absent tolling, the common law claims expired sometime in late December 2019, more than four months before the Complaint was filed on May 7, 2020.

### 2. Puerto Rico's Statutory Tolling Provision Extends Plaintiff's Claims to January 7, 2020, Four Months Before the Complaint Was Filed

Article 1873 of the Civil Code of Puerto Rico states, "Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgement of the debt by the debtor." P.R. Laws Ann. tit. 31, § 5303. When the statute of limitations is "effectively interrupted, the full period begins anew." *Garcia Colon v. Garcia Rinaldi*, 340 F. Supp. 2d 113, 123 (D.P.R. 2004). The First Circuit, citing the Supreme Court of Puerto Rico, has noted that "in view of the importance of the institution of 'extinctive prescription' in the civil law tradition" of Puerto Rican law, "tolling provisions," including the

---

[13] To the extent Plaintiff seeks to argue that, although he was a resident of Puerto Rico at the time of the hack, the injury did not occur there, the district court in *Terpin v. AT&T Mobility, LLC*, a lawsuit brought by Plaintiff centering on exactly the same conduct alleged in this case, held that "Mr. Terpin is domiciled in Puerto Rico and was in Puerto Rico at the time of the incidents." 399 F. Supp. 3d 1035, 1047 (C.D. Cal. 2019).

above-quoted provision "must be interpreted restrictively against the person invoking their protection." *Rodriguez Narvaez v. Nazario*, 895 F.2d 38, 43 (1st Cir. 1990) (citing *Díaz de Diana v. A.J.A.S. Ins. Co.,* 110 P.R.R. 602, 607-608, n.1 (1980)).

Plaintiff filed the original Complaint more than sixteen months after he learned about Pinsky's existence and alleged involvement in the hack.  *See* FAC ¶ 78.  Thus, the action's "institution before the courts" does not bring it within the limitations period.  P.R. Laws Ann. tit. 31 § 5303.  The FAC contains allegations that appear to suggest an argument for either of the other two bases for statutory tolling, an "extrajudicial claim of the creditor" or an "act of acknowledgment of the debt by the debtor."  *Id.*; *see* FAC ¶¶ 78-80.  A brief review of caselaw explicating these statutory terms, however, makes clear that the allegations in the FAC fall short of invoking a sufficiently long tolling period to render the common law claims timely.

The First Circuit has explained that an "extrajudicial claim" may include "virtually any demand formulated by the creditor," though the claim "must be made by the holder of the substantive right (or his legal representative), . . . it must be addressed to the debtor or passive subject of the right, not to a third party, . . .  and it must require or demand the same conduct or relief ultimately sought in the subsequent lawsuit." *Rodriguez Narvaez,* 895 F.2d at 43.  Further, the extrajudicial claim must be "precise and specific." *Bonilla-Aviles v. Southmark San Juan, Inc*., 992 F.2d 391, 393 (1st Cir. 1993) (internal quotation marks omitted).  Simply making a demand without giving "specific notice of the basis of the lawsuit" or simply stating an "intention to file a complaint" does not trigger tolling. *Id.*  The extrajudicial claim must "do something more than merely inform or remind" – rather, it must constitute "the unmistakable manifestation of one, who threatened with the loss of his right, expresses his wish not to lose it." *Kery v. Am. Airlines, Inc.*, 931 F. Supp. 947, 953 (D.P.R. 1995) (internal quotation marks

omitted); *see also Nieves-Vega v. Ortiz-Quinones*, 443 F.3d 134, 137 (1st Cir. 2006) ("[T]he requirements for making an extrajudicial claim are strict.").

The requirements for an "act of acknowledgement of the debt by the debtor" are similarly strict: "The act must communicate the debtor's specific intention of acknowledging the survival of another person's right; it must be spontaneous, unequivocal and clear; and it can never be deduced from acts or conduct from which only indirect inferences can be made as to the debtor's acknowledgement" of the debt. *Rodriguez Narvaez*, 895 F.2d at 44. Courts have held that a partial payment of a plaintiff's claimed damages does not constitute the kind of unequivocal and clear statement of acknowledgment needed to toll the statute of limitations. *See Valentin-Vega v. Allstate Ins. Co.*, No. CIV. 10-1073 GAG, 2011 WL 1843156, at *4 (D.P.R. May 16, 2011).

Importantly, under Puerto Rico law, settlement negotiations do *not* constitute either an effective extrajudicial claim by the creditor or an acknowledgement of the claim by the debtor. *See Bonilla-Aviles*, 992 F.2d at 394 (discussion of settlement did not constitute precise and specific extrajudicial claim); *Rodriguez Narvaez*, 895 F.2d at 45 n.12 (settlement negotiations did not constitute acknowledgment of debt); *Valentin–Vega*, 2011 WL 1843156, *4 ("Efforts made and conversations had between the parties regarding a possible settlement, cannot be regarded as acknowledgment of a debt." (internal quotation marks omitted)). Further, although a qualifying act under the statute starts the one-year limitations period running anew, the limitations period is not thereafter "frozen" during settlement discussions; instead, a new qualifying act must occur to re-trigger the statutory tolling provision. *Bryan v. Wal-Mart Puerto Rico, Inc.*, 951 F. Supp. 2d 236, 240-42 (D.P.R. 2013).

Here, the FAC alleges that on January 7, 2019, Plaintiff's counsel provided a draft complaint to Pinsky's prior counsel containing the RICO and common law claims. FAC ¶ 79. As this communication was identical in material respects to the Complaint ultimately filed

against Pinsky, it constitutes an extrajudicial claim and thus restarted the one-year statute of

limitations running from that date. *See Nieves-Vega*, 443 F.3d at 137. The FAC does not,

however, contain any further allegation that would support additional tolling beyond that period.

The FAC describes a payment made by Defendant purportedly in compromise of Plaintiff's

claims, FAC ¶ 79, but any such payment does not constitute a clear and unequivocal

acknowledgement of the debt under Puerto Rico law. *See Valentin-Vega*, 2011 WL 1843156, at

\*4.[14] The FAC then goes on to describe discussions among the parties about a potential

"settlement agreement" which took place "for an extended period of time." FAC ¶ 79. The FAC

alleges that Defendant's prior counsel "never suggested at any time that Pinsky denied that he

was involved [in] the theft of Mr. Terpin's cryptocurrency," *id.*, but nowhere alleges that

Defendant expressly acknowledged liability, let alone that he did so in the clear and unequivocal

manner required to toll the statute of limitations under Puerto Rico law. Nor does the FAC

identify another extrajudicial claim subsequent to the sending of the draft complaint on January

7, 2019. Plaintiff bears the burden of establishing his eligibility for statutory tolling. *See Kelly

v. Lohan*, No. 08 CV 2205 (JG)(ARL), 2008 WL 4693317, at \*2 n.6 (E.D.N.Y. Oct. 23, 2008).

The FAC fails even to plead a basis for tolling under Puerto Rico's statute that would extend the

limitations period beyond January 7, 2020, four months before the Complaint was filed.

### 3.      Equitable Tolling Does Not Apply

Nor is Plaintiff entitled to equitable tolling. "Puerto Rico law provides for equitable

tolling in a case of damage willfully and wrongfully . . . concealed by the author of the same."

*Benitez-Pons v. Com. of Puerto Rico*, 136 F.3d 54, 61 (1st Cir. 1998) (internal quotation marks

omitted). Under federal law, "[e]quitable tolling applies only in the rare and exceptional

---

[14]      Even if such payment were sufficient, the FAC is conspicuously vague on when it
occurred. If made any time prior to May 7, 2019, it would fail to bring the filing of the
Complaint within the tolled limitations period.

circumstance." *Bertin v. United States*, 478 F.3d 489, 494 n.3 (2d Cir. 2007) (internal quotation marks omitted).  "As a general matter, a litigant seeking equitable tolling must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (internal quotation marks omitted); *see also Zerilli-Edelglass v. N.Y.C. Trans. Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) ("[E]quitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." (alterations, citations, and quotation marks omitted)).  Plaintiff complains about "assurances from Pinsky's counsel that the parties were engaging in good faith settlement communications . . . [and] repeated pleas and requests that Plaintiff defer filing and work with Pinsky to find a resolution."  FAC ¶ 79.  "However, settlement discussions are not the sort of extraordinary circumstance that would trigger the application of equitable tolling."  *Rite Aid of N.Y., Inc. v. 1199SEIU United HealthCare Workers E.*, 334 F. Supp. 3d 568, 576 (S.D.N.Y. 2017); *see also In re Enron Corp.*, 419 F.3d 115, 125 (2d Cir. 2005) (fact that counsel "was distracted by extensive negotiations" with opposing party did not constitute excusable neglect).  That is why parties typically enter into tolling agreements during protracted settlement discussions.  Nothing stood in the way of Plaintiff filing his Complaint before January 7, 2020 or entering into a tolling agreement with Defendant while settlement discussions proceeded.  Having failed to do either, Plaintiff cannot fall back on equitable tolling where no extraordinary circumstances prevented timely filing.  Accordingly, the common law claims are time-barred.

## C.     THE REPLEVIN CLAIM FAILS BECAUSE THE FAC DOES NOT ALLEGE THAT ANY IDENTIFIABLE PROPERTY IS IN PINSKY'S POSSESSION

Plaintiff's replevin claim fails for an independent reason, namely, on the facts alleged, the FAC does not permit a reasonable inference that any identifiable property remains in Pinsky's

possession.  Replevin "is a remedy employed to recover a specific, identifiable item of personal property." *Heckl v. Walsh*, 996 N.Y.S.2d 413, 415 (N.Y. App. Div. 2014).  "[O]rdinary currency, as a rule, is not subject to replevin."  *Id.* (internal quotation marks omitted); *see also M & D Sportswear, Inc. v. PRL U.S.A. Holdings, Inc.*, No. 02 CIV. 1562(GEL), 2002 WL 31548495, at *5 (S.D.N.Y. Nov. 14, 2002) ("Recovery of damages for the unlawful detention of the chattel is incidental to the return of the chattel to its owner; therefore, [a] plaintiff may not seek damages alone.").  Further, "[a] cause of action in replevin must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right."  *Dore v. Wormley*, 690 F. Supp. 2d 176, 183 (S.D.N.Y. 2010) (internal quotation marks omitted).  Here, the FAC identifies specific, identifiable property, namely, "3,000,000 Triggers, 12,500 Steem, and 20,000 Skycoin," FAC ¶ 47, but does not allege such property is in Pinsky's possession.  To the contrary, it alleges that all the cryptocurrency was converted to Bitcoin, that such Bitcoin was distributed among private wallets controlled by various individuals, and that at least some was converted to cash and used to purchase various goods.  *Id.* ¶¶ 48-56.  The FAC does not contain any allegation suggesting that Pinsky retains possession of any Triggers, Steem or Skycoin, and would thus be able to return property to Plaintiff.  Thus, the FAC fails to plausibly allege a cause of action for replevin.

### D. THE FAC'S CLAIM FOR A PRELIMINARY AND PERMANENT INJUNCTION SHOULD BE DISMISSED

Having failed to state a claim on which relief could be granted, Plaintiff's bid for a preliminary and permanent injunction fails because he cannot show a "likelihood of success on the merits." *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010) (internal quotation marks omitted).  And even if Plaintiff's substantive claims could proceed, he would then be unable to show that he lacks an adequate remedy at law.  *See Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006).  Finally, Plaintiff cannot show irreparable harm that is "actual and imminent." *Tom*

*Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995).  Although Plaintiff filed the Complaint in May of 2020 (nearly two-and-a-half years after the alleged conduct), he has not, in the five months since that time, actually moved for a preliminary injunction, a delay that "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Woodstock Ventures LC v. Woodstock Roots, LLC*, 387 F. Supp. 3d 306, 312 n.2 (S.D.N.Y. 2019) (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, Terpin's claims against Pinsky should be dismissed for failure to state a claim.

Dated:  New York, New York
        October 1, 2020

                                        SHER TREMONTE LLP

                                        By: */s/Noam Biale*
                                            Noam Biale
                                            Michael Tremonte
                                            Mark Cuccaro
                                            90 Broad Street, 23rd Floor
                                            New York, New York 10004
                                            (212) 202-2600
                                            nbiale@shertremonte.com

                                        *Attorneys for Defendant Ellis Pinsky*