UNITED STATES DISTRICT COURT
<u>SOUTHERN DISTRICT OF NEW YORK</u>

MICHAEL TERPIN,

                        Plaintiff,

    -against-

ELLIS PINSKY, as an individual; and DOES 1-20, Inclusive,

                      Defendants.

No. 20 CV 3557 (CS)

## <u>DEFENDANT ELLIS PINSKY'S REPLY IN FURTHER SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

Noam Biale
Michael Tremonte
Mark Cuccaro
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
nbiale@shertremonte.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................... 1
ARGUMENT ......................................................................................................................... 2
    I.    THE COURT SHOULD DISMISS THE RICO CLAIM ............................................ 2
    II.   THE COMMON LAW CLAIMS ARE TIME-BARRED......................................... 11
    III.  THE REPLEVIN CLAIM DID NOT ACCRUE IN NEW YORK ............................ 14
CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Case(s)**

*421-A Tenants Ass'n Inc. v.125 Court St. LLC*,
    No. 17 Civ. 563 (AMD) (JO), 2017 WL 6612933 (E.D.N.Y. Nov. 2, 2017) ..................... 5

*Ackerman v. Price Waterhouse*,
    683 N.Y.S.2d 179 (App. Div. 1998) ................................................................................ 12

*Appel v. Kidder, Peabody & Co. Inc.*,
    628 F. Supp. 153 (S.D.N.Y. 1986) ................................................................................... 12

*Aronov v. Mersini*,
    No. 14-CV-7998 (PKC), 2015 WL 1780164 (S.D.N.Y. Apr. 20, 2015) ........................ 4, 7

*Bangladesh Bank v. Rizal Commercial Banking, Corp.*,
    No. 19 Civ. 983 (LGS), 2020 WL 1322275 (S.D.N.Y. Mar. 20, 2020) ............................ 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................... 3

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
    369 F.3d 212 (2d Cir. 2004) ............................................................................................. 11

*Boyle v. United States*,
    556 U.S. 938 (2009) ........................................................................................................... 9

*Broidy Capital Mgmt. LLC v. Muzin*,
    No. 19-cv-150 (DLF), 2020 WL 1536350 (D.D.C. Mar. 31, 2020) ................................... 6

*Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC*,
    140 N.E.3d 511 (N.Y. 2019) ............................................................................................ 12

*F.D. Prop. Holding Inc. v. U.S. Traffic Corp.*,
    206 F. Supp. 2d 362 (E.D.N.Y. 2002) ............................................................................... 8

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004) ...................................................................................... 3, 9, 10

*Flexborrow LLC v. TD Auto Fin. LLC*,
    255 F. Supp. 3d 406 (E.D.N.Y. 2017) ............................................................................. 10

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*,
    848 F.2d 24 (2d Cir. 1988) ............................................................................................... 13

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
    640 F. Supp. 2d 300 (S.D.N.Y. 2009) .................................................................................. 3

*Grimes v. Fremont Gen. Corp.*,
    785 F. Supp. 2d 269 (S.D.N.Y. 2011) .................................................................................. 7

*In re Estate of McLaughlin*,
    910 N.Y.S.2d 252 (App. Div. 2010) .................................................................................. 15

*Int'l Bh'd of Teamsters v. Carey*,
    297 F. Supp. 2d 706 (S.D.N.Y. 2004) .................................................................................. 8

*JBCHoldings NY, LLC v. Pakter*,
    931 F. Supp. 2d 514 (S.D.N.Y. 2013) .................................................................................. 5

*Lang v. Paine, Webber, Jackson & Curtis, Inc.*,
    582 F. Supp. 1421 (S.D.N.Y. 1984) .................................................................................. 12

*Lynch v. Amoruso*,
    232 F. Supp. 3d 460 (S.D.N.Y. 2017) ................................................................................ 10

*Monastra v. NYNEX Corp.*,
    No. 99CIV.8917(RCC), 2000 WL 1290596 (S.D.N.Y. Sept. 12, 2000) ............................ 5

*Munoz–Nagel v. Guess, Inc.*,
    No. 12–CV-1312 (ER), 2013 WL 1809772 (S.D.N.Y. Apr. 30, 2013) .............................. 3

*Neal v. Town of E. Haven*,
    694 F. App'x 44 (2d Cir. 2017) ......................................................................................... 12

*Negrete v. Citibank, N.A.*,
    187 F. Supp. 3d 454 (S.D.N.Y. 2016) .................................................................................. 3

*Pajarillo v. Bank of Am.*,
    No. 10CV937 DMS (JMA), 2010 WL 4392551 (S.D. Cal. Oct. 28, 2010) ....................... 8

*Purchase Real Estate Grp. Inc. v. Jones*,
    No. 05 CIV. 10859, 2010 WL 3377504 (S.D.N.Y. Aug. 24, 2010) ................................... 6

*Rosner v. Star Gas Partners, L.P.*,
    344 F. App'x 642 (2d Cir. 2009) ....................................................................................... 12

*Sewell v. Bernardin*,
    795 F.3d 337 (2d Cir. 2015) .............................................................................................. 11

*United States v. Aulicino*,
　　44 F.3d 1102 (2d Cir. 1995) ............................................................................................. 8

*United States v. Faiella*,
　　39 F. Supp. 3d 544 (S.D.N.Y. 2014) ............................................................................... 15

*United States v. Turkette*,
　　452 U.S. 576 (1981) .......................................................................................................... 9

**Statutes**

18 U.S.C. § 1962 ............................................................................................................................ 2

P.R. Laws Ann. tit. 31 § 5303 ..................................................................................................... 14

## PRELIMINARY STATEMENT

Defendant Ellis Pinsky ("Pinsky" or "Defendant"), by and through his undersigned counsel, respectfully submits this reply in further support of his Motion to Dismiss the First Amended Complaint (the "FAC") filed by Michael Terpin ("Terpin" or "Plaintiff").[1]

Plaintiff's various arguments in opposition to Pinsky's motion to dismiss the RICO claim boil down to one major concession: that he lacks any facts to support his claim of the existence of an enterprise or a continuing pattern of racketeering activity. Plaintiff all but admits that the FAC contains no particularized allegation with respect to any activity of the enterprise beyond the conversion of Plaintiff's cryptocurrency. Resisting the inexorable conclusion that the FAC therefore fails to plausibly allege the enterprise and pattern elements of RICO, Plaintiff argues that it is sufficient to plead those elements on information and belief. He is wrong. The FAC falls short of alleging a RICO claim because Plaintiff's claim is based on a speculative leaps – that it is "not possible" that Defendant allegedly could have obtained Plaintiff's cryptocurrency "without the structure, roles, and hierarchy brought to the task by an Enterprise" and that "[t]his was not the Enterprise's 'first rodeo.'" Pl.'s Br. 2, 5. These rhetorical sound-bites are no substitute for a well-pleaded allegation that Defendant is liable under RICO.

As to his common law claims, Plaintiff resists dismissal on statute of limitations grounds based entirely on facts outside the FAC. Despite two complaints in this litigation and complaints in numerous other cases Plaintiff has filed in connection with the theft of his cryptocurrency, he now for the first time claims that he was injured in Nevada because he was there at the time of the hack. Further, Plaintiff's opposition includes a declaration from his counsel (the "O'Donnell Declaration") setting forth facts that he argues toll the statute of limitations if Puerto Rico law

---

[1] Pinsky's Motion to Dismiss is referenced herein as "Mot." Terpin's Memorandum in Opposition to the Motion to Dismiss is referenced herein as "Pl.'s Br." Unless otherwise noted, all case citations omit internal quotation marks.

1

applies. The Court should reject Plaintiff's untimely attempt to buttress the factual record despite being on notice of Defendant's grounds for dismissal of his common law claims and the Court's admonition that it was unlikely to allow further amendment after motion practice. In any event, Plaintiff's arguments are unavailing because New York law is clear that the place of injury is where the economic impact occurs, not where the plaintiff happened to be at the time of the alleged conduct, and all of the communications referenced in the O'Donnell Declaration are settlement negotiations that do not toll the statute of limitations.

As the FAC fails to plausibly allege any claim on which relief can be granted, the Court should grant the Motion in its entirety. In the alternative, because Plaintiff's argument on the common law claims rests on factual assertions raised for the first time in his opposition brief, if the Court does not grant the Motion, it should convert it to a motion for summary judgment and order limited discovery on Defendant's statute of limitations defense.

## ARGUMENT

### I. THE COURT SHOULD DISMISS THE RICO CLAIM

As argued in the Motion, the FAC fails plausibly to allege the enterprise and pattern elements of 18 U.S.C. § 1962 because (1) it does not allege any enterprise distinct from the pattern of racketeering activity; (2) it fails to allege an ongoing organization of sufficient longevity to meet the definition of an enterprise; and (3) it fails to allege either closed-ended or open-ended continuity. Plaintiff's arguments to the contrary are meritless.

Plaintiff's primary argument to address these pleading deficiencies amounts to a concession: that he does not possess any facts he *could* plead with respect to other activities of the enterprise beyond the alleged facts related to Plaintiff's cryptocurrency. Instead, he argues all such allegations are properly pled on information and belief. Thus, in response to Defendant's argument that the FAC fails to allege a distinct enterprise, Plaintiff argues, "As to

facts relating to the SIM swaps of other victims, . . . Plaintiff's allegations in regard to these victims are properly based on information and belief." Pl.'s Br. 7. Similarly, regarding the longevity of the enterprise, Plaintiff responds that the FAC alleges the enterprise "operated both before and most likely after the Terpin hack . . . on information and belief." *Id.* at 8. Finally, with respect to continuity, he argues, "Plaintiff here properly alleges on information and belief the fact that the predicate acts were committed by the Enterprise on other victims." *Id.* at 12. In other words, Plaintiff does not dispute that he is bootstrapping the allegations regarding the hack of his own cryptocurrency into a wide-ranging RICO claim; yet he contends he may do so by alleging essential elements of RICO on information and belief. He is wrong.

While "a plaintiff may plead facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible," *Munoz–Nagel v. Guess, Inc.*, No. 12–CV-1312 (ER), 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013), such pleadings "must contain something more than a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations omitted). Moreover, "Rule 9(b) pleadings *cannot* be based on information and belief." *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 462 (S.D.N.Y. 2016) (emphasis added). The one exception to that rule is where the information is "peculiarly within a defendant's knowledge," but "this does not mean that those matters may be pled lacking any detail at all." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) ("*First Capital*"). "Where a plaintiff is permitted to plead on information and belief, the complaint must adduce *specific facts supporting a strong inference of fraud* or it will not satisfy even a relaxed pleading standard." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 310 (S.D.N.Y. 2009) (emphasis added).

3

Here, Plaintiff argues that the facts concerning other alleged hacks are peculiarly within Defendant's knowledge, Pl.'s Br. 7, but his own arguments and allegations in the FAC undercut that claim. *First*, he repeatedly cites to the FAC's allegation that the enterprise started in 2015. *See* Pl.'s Br. 10 (citing FAC ¶ 92); *see also id.* at 1, 2, 9, 11, 12, 13. One might assume this allegation is made based on information about an incident that actually occurred in 2015, yet the FAC lacks any specific allegation of any event taking place then. *Second*, Plaintiff argues that he has "information derived from informants," Pl.'s Br. 6, yet the FAC provides no such information concerning hacks other than the conversion of Plaintiff's cryptocurrency. *Third*, the FAC includes multiple allegations based on statements of non-defendant Nicholas Truglia, who it claims was involved in multiple hacks with Pinsky, FAC ¶¶ 61-63, none of which are described with any particularity. *Fourth*, the FAC alleges that Pinsky perpetrated another hack in 2017 based in part on apparent tracing analysis on cryptocurrency "wallets known to be owned and controlled by Pinsky," FAC ¶ 77, but still fails to describe this hack with particularity. *Fifth*, the FAC alleges that "one victim" of the enterprise – suggesting that victim is a person separate from Terpin – "lost all the money set aside for his daughter's college education," FAC ¶ 12, but the FAC contains no particularized allegations about this hack.

In sum, Plaintiff identifies numerous categories of information to support allegations of other hacks *besides* Defendant's exclusive knowledge: supposed informants, Truglia, other alleged victims, and his cryptocurrency tracing analysis. Accordingly, Plaintiff cannot avail himself of the exception to Rule 9(b)'s heightened pleading requirement. *See Aronov v. Mersini*, No. 14-CV-7998 (PKC), 2015 WL 1780164, at *3–5 (S.D.N.Y. Apr. 20, 2015) (in case involving RICO predicates sounding in fraud, holding plaintiffs failed to meet exception to Rule 9(b) pleading standard because victims of other alleged instances of fraud would have known of misrepresentations, and thus facts were not "peculiarly within defendants' knowledge").

4

Moreover, even if Plaintiff could properly allege other activities of the alleged enterprise on information and belief, he fails to provide the required "statement of the facts upon which the belief is founded." *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 527 (S.D.N.Y. 2013). Rather, Plaintiff's brief repeats the same assumptions as the FAC—that the hack of Plaintiff's cryptocurrency suggests there *must* be a RICO enterprise at work, and the enterprise *must* have engaged in similar conduct before. *See* Pl.'s Br. 2 ("[I]t is not possible to engage in all of this illegal conduct without the structure, roles, and hierarchy brought to the task by an Enterprise."); *id.* at 5 ("This was not the Enterprise's 'first rodeo.'"); *see also* Mot. 18, 20 (describing allegations in FAC that assert, based on nature of incident involving Plaintiff's cryptocurrency, "supposed other hacks *must* have been accomplished through SIM swaps"). That is a statement of an *assumption*, not a well-pleaded factual basis for Plaintiff's belief. *See 421-A Tenants Ass'n Inc. v. 125 Court St. LLC,* No. 17 Civ. 563 (AMD) (JO), 2017 WL 6612933, at *4 (E.D.N.Y. Nov. 2, 2017) (allegation that defendants "engaged in the same scheme" as that involving plaintiffs insufficient to support an inference of fraud where plaintiffs "do not explain how they know this to be true, or include any facts—an example of a fraudulent statements, who made the statements, or when the statements were made—to support [the] inference").

Beyond this assumption, the FAC fails to provide any statement of the facts upon which Plaintiff's belief is founded. For example, despite repeatedly stating that Defendant has engaged in hacking since he was thirteen, the FAC never once provides a basis for that assertion. Although reasonable inferences from the pleading should be drawn in Plaintiff's favor, the Court "cannot extrapolate a set of reasonable inferences in favor of plaintiff without sufficient factual allegations from which to draw these inferences." *Monastra v. NYNEX Corp.*, No. 99CIV.8917(RCC), 2000 WL 1290596, at *7 (S.D.N.Y. Sept. 12, 2000). And "[w]hile courts have made an exception to the particularity requirements . . . when facts are peculiarly within the

5

opposing party's knowledge, this exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations, especially in the context of RICO claims." *Purchase Real Estate Grp. Inc. v. Jones*, No. 05 CIV. 10859, 2010 WL 3377504, at *8 (S.D.N.Y. Aug. 24, 2010).

Conceding that he is subject to the heightened pleading standard, Plaintiff nevertheless argues that he "has pled the facts regarding the wire fraud predicate acts inflicted *on him* with particularity." Pl.'s Br. 7 (emphasis added); *see also id.* at 6 n.4. But that is all he has done. Like the plaintiff in *Broidy Capital Management LLC v. Muzin*, No. 19-cv-150 (DLF), 2020 WL 1536350 (D.D.C. Mar. 31, 2020) ("*Broidy*"), Plaintiff has detailed fraudulent conduct as to himself, and alleged, vaguely, that there are multiple other victims, somewhere out there. As the *Broidy* Court held, that is not sufficient to make out a pattern of predicate acts to establish a RICO claim. *Id.* at *10-*11. Plaintiff's effort to distinguish this and other cases is unavailing. He simply states that, unlike the plaintiff in *Broidy*, he has alleged that the enterprise here targeted "multiple victims in order to rob cryptocurrency owners of their assets, and that these actions took place from at least 2015." Pl.'s Br. 13. But the complaint in *Broidy* foundered on the lack of *particularized* allegations of other victims – the same deficiency that exists here. Plaintiff tries to distinguish other cases on their facts or procedural posture without grappling with the rule of law articulated in those cases. *See, e.g.*, *id.* at 7-9. For example, Plaintiff attempts to distinguish the other recent case involving a hacking incident cited by Defendant, *Bangladesh Bank v. Rizal Commercial Banking, Corp.*, No. 19 Civ. 983 (LGS), 2020 WL 1322275 (S.D.N.Y. Mar. 20, 2020), similarly to *Broidy* by stating that, unlike in that case, he has alleged an enterprise separate and distinct from the alleged racketeering activity. *See* Pl.'s Br. 6 n.2. But, again, besides simply *saying* he has alleged this element, Plaintiff does not point to any allegation that *plausibly supports it*. And although Plaintiff spends considerable time attempting

6

to distinguish cases cited in Defendant's Motion, he does not identify a single case in which a court has allowed a RICO complaint to proceed to discovery where the enterprise and pattern elements are pled solely on information and belief.

As to Plaintiff's claim that he has adequately alleged closed-ended continuity by alleging predicate acts that "took place from at least 2015," *id.* at 13, as an initial matter, Plaintiff has notably shifted tacks from the FAC, where he repeatedly alleges that Defendant has been hacking since age thirteen (which would suggest a period of approximately two years until the Terpin hack occurred, when Defendant was fifteen), to now arguing that because the actions of the enterprise span from an unspecified date in 2015 to early January 2018, they lasted "three years." *Id.* at 11.[2] But even assuming that dating the activities of the enterprise back to 2015 is a sufficient duration, the FAC contains not a single allegation of anything – let alone a predicate act of racketeering – that took place in 2015. It contains not a single allegation of anything that took place in 2016. And its allegation that a hack occurred in 2017, which does not specify a date, *see* FAC ¶ 77, refers to an incident that, according to news reports, occurred in December 2017. *See* Mot. 19 n.9. These allegations of a general time period in which other SIM Swap frauds occurred do not approach the particularized pleading standard of Rule 9(b). *See Aronov*, 2015 WL 1780164, at *4 (holding allegation of eight-month period in which misrepresentations were made did not meet Rule 9(b) standard and citing similar cases). Even if the last allegation of a hack occurring in December 2017 were sufficiently particularized, which it is not, that would only extend the period of activity by at most one month, far below the threshold necessary to establish either longevity of the enterprise or closed-ended continuity. *See Grimes v. Fremont*

---

[2]   The FAC contains only one reference to 2015, in paragraph 92, which Plaintiff quotes in full in his brief, *see id.* at 10, and states, in conclusory fashion, "on information and belief since at least 2015" the defendants conspired to engage "in multiple coordinated schemes to defraud . . . and to launder the proceeds" of their fraud. FAC ¶ 92.

*Gen. Corp.*, 785 F. Supp. 2d 269, 301 (S.D.N.Y. 2011) ("[A]lthough Plaintiffs assert that the enterprise operated for over two years, . . . they provide no basis for that belief, or any facts regarding when the enterprise began, or other specific predicate acts of mail and wire fraud." (internal citations omitted)); *Pajarillo v. Bank of Am.*, No. 10CV937 DMS (JMA), 2010 WL 4392551, at *7 (S.D. Cal. Oct. 28, 2010) (dismissing RICO complaint alleging on information and belief that defendants engaged in "more instances of racketeering activity involving different victims but utilizing the same method, means, mode, operation and enterprise").

As to open-ended continuity, Plaintiff argues he has alleged a continuing threat of criminal activity by the enterprise simply by labeling its conduct unlawful and attempting to shift the burden to Defendant to "advance a[] plausible innocent explanation of the Enterprise's activities." Pl.'s Br. 13. That is not the law. Plaintiff conspicuously ignores cases cited in the Motion explaining that, in the RICO context, "inherently unlawful" refers to those acts that, by their nature, involve a "threat of repetition," *United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995), and holding that fraud—especially targeting a single victim—is not such an act. *See, e.g.*, *Int'l Bh'd of Teamsters v. Carey*, 297 F. Supp. 2d 706, 715 (S.D.N.Y. 2004); *F.D. Prop. Holding Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 371 (E.D.N.Y. 2002).[3] Plaintiff's assertion that the enterprise operated "*most likely* after the Terpin hack," Pl.'s Br. 8 (emphasis added), underscores the speculative nature of his claim that there is any ongoing activity or threat. Finally, contrary to Plaintiff's argument, that the FAC's allegations themselves suggest the conduct was terminable is relevant, as numerous cases cited in the Motion (and many others not included for brevity) have held. *See* Mot. 24-25 (citing cases). As Plaintiff has not plausibly

---

[3] Plaintiff distinguishes *International Brotherhood of Teamsters* on a separate ground, namely, that it also held that the predicate acts were not a "regular way of conducting defendant's ongoing legitimate business," Pl.'s Br. 15, but does not address its holding that fraud was not "inherently unlawful *in the* Aulicino *sense*." 297 F. Supp. 2d at 715 (emphasis added).

alleged an enterprise distinct from the alleged pattern of racketeering or with sufficient longevity and has not plausibly alleged closed-ended or open-ended continuity, his RICO claims fail.

Plaintiff's remaining arguments are all unavailing. On the enterprise element, Plaintiff misconstrues the law as articulated by the Supreme Court and the Second Circuit. Resisting Defendant's contention that the FAC fails to allege the existence of an enterprise separate from the alleged pattern, Plaintiff argues that, under *Boyle v. United States*, 556 U.S. 938 (2009), all he must allege is "that the enterprise had a general criminal purpose (stealing cryptocurrency), relationships among those associated with the enterprise (coordinated roles in SIM swaps and sharing of the proceeds of the thefts of multiple victims) and longevity (existence for a number of years to commit multiple SIM swaps)." Pl.'s Br. 5. But the Supreme Court in *Boyle* reaffirmed its longstanding precedent that the enterprise "must have an ascertainable structure *beyond that* inherent in the pattern of racketeering activity in which it engages." *Boyle*, 556 U.S. at 940-41 (emphasis added). The FAC does not do that. Its allegations as to the structure of the enterprise simply divides up the activities that constituted the theft of Plaintiff's cryptocurrency and states that each activity was the "role[]" of a member of the enterprise. FAC ¶ 37. Plaintiff's opposition makes clear that there is no other purpose, activity, or relationships of the enterprise beyond this alleged conduct, and thus no "entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

Plaintiff further asserts that, in the Second Circuit, the requirement of an entity distinct from the pattern of racketeering activity "means only that there is 'an association of individuals' that 'share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.'" Pl.'s Br. 4 (alteration omitted) (quoting *First Capital*, 385 F.3d at 174). That argument misstates the law. In *First Capital*, the Second Circuit stated that, under RICO, the "enterprise must be separate from the pattern of racketeering activity," 385 F.3d

9

at 173, and added that, in this Circuit, a plaintiff must also establish "that a nexus exist[s] between the enterprise and the racketeering activity that is being conducted," and "for an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *Id.* at 174 (alteration omitted). In other words, *First Capital* instructs that *additional* elements must be proved to establish a RICO claim – it does not, as Plaintiff suggests, define a distinct entity to mean only an association of individuals with a common purpose. In other words, in the Second Circuit, a plaintiff's burden is higher that the distinctness requirement established by the Supreme Court. Plaintiff here has not even met the lower threshold.[4]

Finally, Plaintiff falls back on general arguments that RICO should be "read broadly" with a "flexible approach" to its requirements. Pl.'s Br. 3-4. But because civil RICO is "an unusually potent weapon—the litigation equivalent of a thermonuclear device," courts generally "strive to flush out frivolous RICO allegations at an early stage of litigation." *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017) (Bianco, J.). Indeed, courts are skeptical of civil RICO claims precisely because "plaintiffs wielding RICO almost always miss the mark, . . . dressing up run-of-the-mill fraud claims as RICO violations." *Id.* Plaintiff has missed the mark here. "Courts have refused to find a RICO violation in cases like this, where the plaintiffs attempt to transform a single scheme of limited duration into a RICO enterprise." *Lynch v. Amoruso*, 232 F. Supp. 3d 460, 468 (S.D.N.Y. 2017) (alteration omitted). The RICO claim should be dismissed.

---

[4] *First Capital* ultimately affirmed Judge Kaplan's Rule 12(b)(6) dismissal of a RICO claim because the complaint failed "to detail any *course* of fraudulent or illegal conduct separate and distinct from the . . . racketeering acts themselves," and failed to advance "any factual allegations that the [alleged enterprise] was an ongoing organization." *Id.* The FAC here suffers from the very same flaws.

## II. THE COMMON LAW CLAIMS ARE TIME-BARRED

Plaintiff argues that his common law claims are not time-barred because (a) the accrual of his claims in Puerto Rico does not appear on the face of the FAC; (b) his claims instead accrued in Nevada, where, he now asserts, he was at the time of the hack; and (c) if his claims accrued in Puerto Rico, they are tolled based on additional discussions between the parties prior to the filing of the lawsuit.  Plaintiff's first argument fails because it is entirely proper for Defendant to raise a statute of limitations defense based on documents of which the Court may take judicial notice, *see Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015), and the Court may take judicial notice of Plaintiff's complaint in his suit against AT&T, in which he alleged he is domiciled in Puerto Rico, and the district court's decision in that case, which held that he was domiciled in Puerto Rico and was in Puerto Rico during the relevant time period.  *See* Mot. 28 & n.13.[5]

As to Plaintiff's second and third arguments, they rely entirely on facts outside the FAC raised for the first time in response to the Motion to Dismiss, and thus are not properly considered in deciding the Motion.  *See, e.g., Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (review of motion to dismiss limited to the facts and allegations in the complaint and any documents incorporated by reference or attached as exhibits).  Plaintiff omitted these apparently critical facts from the FAC after Defendant filed a pre-motion letter setting forth his statute of limitations defense based on Plaintiff's claim accruing in Puerto Rico.  *See* Dkt. # 17.  Thus, despite being on notice of Defendant's argument and this Court's encouragement to resolve issues by amendment "[n]ow that Plaintiff has an idea of the grounds on what the motion would be," Tr. of Pre-Mot. Conf. 2,

---

[5]    Notably, although this is Plaintiff's third lawsuit regarding this same conduct, he has *never* previously alleged – not in three complaints and three rounds of briefing on a motion to dismiss in the AT&T litigation, and not in the complaint in his lawsuit against Truglia – that he is a resident of Nevada or that he was in Nevada at the time of the hack.

Plaintiff asks the Court to *infer* from the FAC that the place of injury was Nevada (despite its conceded silence on this point) or to allow further amendment. The Court should decline to do either. *See Neal v. Town of E. Haven*, 694 F. App'x 44, 46 (2d Cir. 2017) (although court draws reasonable inferences in plaintiff's favor, it should "not speculate as to crucial facts about which the amended complaint is nearly silent"); *Rosner v. Star Gas Partners, L.P.*, 344 F. App'x 642, 645 (2d Cir. 2009) (affirming denial of leave to amend where, *inter alia*, court gave plaintiffs "the opportunity to amend the Complaint after a pre-motion telephone conference where the defendants described their arguments in favor of dismissal").

  Even if the Court were to consider Plaintiff's assertion that he was in Nevada at the time of the hack, Plaintiff's argument would fail because it misconstrues the law governing "place of injury." Under New York law, claims for economic injury accrue where the plaintiff resides and "where the economic impact of the defendant's conduct was felt." *Ackerman v. Price Waterhouse*, 683 N.Y.S.2d 179, 196 (App. Div. 1998). That is not where the plaintiff happened to be at the time of the alleged conduct. Rather, "the thrust of the inquiry is who became poorer, and where did they become poorer as a result of the conduct complained of." *Appel v. Kidder, Peabody & Co. Inc.*, 628 F. Supp. 153, 156 (S.D.N.Y. 1986). In addition, the New York Court of Appeals has recognized that in certain unusual cases courts may "appl[y] a 'financial base' rule to determine where the economic injury was sustained" even if that location is not the plaintiff's state of residence. *Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC*, 140 N.E.3d 511, 517 (N.Y. 2019) (citing *Lang v. Paine, Webber, Jackson & Curtis, Inc.*, 582 F. Supp. 1421, 1425-26 (S.D.N.Y. 1984)). Thus, whether or not Plaintiff happened to be in Puerto Rico or Nevada at the time of the hack is beside the point: the question is where the economic loss was felt. In this regard, although the FAC is silent, the Court may consider Plaintiff's concession— and the U.S. District Court for the Central District of California's holding—that Plaintiff is

domiciled in Puerto Rico. And, as discussed in the Motion, it is consistent with the New York borrowing statute's legislative purpose to hold Plaintiff to the shortest limitations period available, namely Puerto Rico's. *See* Mot. 27-28 (citing cases). At a minimum, the Court should order discovery on this limited issue to resolve Defendant's statute of limitations defense.[6]

Similarly, as to Plaintiff's argument that if Puerto Rico law applies, the statute of limitations is tolled, his argument rests on facts set forth in twelve paragraphs of the O'Donnell Declaration, none of which—besides Plaintiff providing a draft complaint to Defendant's prior counsel in January 2019—are included in the FAC. Despite relying on myriad facts outside the pleading, Plaintiff states that he "does not seek to convert the Motion into a motion for summary judgment." Pl.'s Br. 27. But the Court has only "two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the [C]ourt may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988). Plaintiff cannot have it both ways.

Again, even if the Court were to consider Plaintiff's newly proffered facts, they fail to provide a basis to toll the statute of limitations. The additional communications cited by Plaintiff

---

[6] Based on publicly-available social media and statements by Plaintiff, he regards Puerto Rico as his home and financial base in order to avail himself of local tax provisions friendly to cryptocurrency investors. For example, Plaintiff's Twitter page identifies his location as "San Juan, PR (and airplanes)." http://twitter.com/michaelterpin. An Instagram post from February 11, 2018 states, "Nothing like baked malanga chips to make you feel like you're back home! #puertoricolife." https://www.instagram.com/p/BfETjQ4Bkh3/. In a November 2018 interview, Plaintiff extolled the virtues of Puerto Rico as a haven for cryptocurrency investors because, as he described, Puerto Rico does not impose tax liability on cryptocurrency sales until the currency is converted to dollars.
https://www.youtube.com/watch?v=W5kGL28oRn4&t=830s&ab_channel=Bitsonline (at 3:30). And in a January 2020 interview, Plaintiff stated, "I came [to Puerto Rico] for the tax benefits." https://www.youtube.com/watch?v=SaIr0m8z5w&t=2094s&ab_channel=TonyDelgado (at 5:20).

are patently settlement negotiations, and thus do not constitute either an "extrajudicial claim of the creditor" or an "acknowledgment of the debt by the debtor." P.R. Laws Ann. tit. 31 § 5303; *see* Mot. 30 (citing cases). As an initial matter, the Court may ignore communications cited in the O'Donnell Declaration that occurred more than a year prior to the filing of the Complaint, as they do not render Plaintiff's claims timely. *See* O'Donnell Decl. ¶¶ 3-5. The remaining paragraphs describe information provided by Defendant's counsel in the context of settlement discussions, *id.* ¶ 6; negotiation as to whether payment of $22 million or a lesser sum would resolve the claims, *id.* ¶¶ 9-10; a statement that Defendant had agreed in principle "to *settle* the matter," *id.* ¶ 11 (emphasis added); and discussion of drafts of documents that would effectuate the settlement, including a stipulated judgment, *id.* ¶ 13.[7] Tellingly, Plaintiff also cites communications indicating that the timing for settlement or filing a complaint was tied to Defendant's eighteenth birthday. *Id.* ¶ 12. There is no rule of law, however, in Puerto Rico or anywhere else, that tolls a plaintiff's claims until the defendant attains majority. If Plaintiff chose to wait until Defendant turned eighteen to file his complaint in order to avoid the atmospherics of suing a child, he must live with the consequences of that choice.

## III. THE REPLEVIN CLAIM DID NOT ACCRUE IN NEW YORK

Finally, Plaintiff argues that his replevin claim accrued in New York because Defendant allegedly refused to return Plaintiff's property in New York. *See* Pl.'s Br. 34.[8] This argument

---

[7] Plaintiff cites a phone conversation in which Defendant's prior counsel purportedly said, "You can have a judgment from Ellis anytime," misleadingly suggesting that this amounts to an acknowledgement of liability. *Id.* ¶ 8 (alteration omitted); *see* Pl.'s Br. 30. Seen, however, in the context of the parties' discussions of reducing the settlement agreement to a judgment, this statement cannot be construed as the kind of unequivocal acknowledgement of a debt required under Puerto Rico law. Plaintiff further states that, even if not an acknowledgement, the statement "conveyed a willingness to engage in a process to resolve the claim," *id.*, but that is not one of the circumstances that triggers tolling under Puerto Rico's statute.

[8] Plaintiff does not address Defendant's motion to dismiss the claim for injunctive relief.

14

borders on frivolousness. It postulates that cryptocurrency should not be treated as "ordinary currency" because it "does not come in the form of physical bills," and is "transferred through an encrypted and decentralized public ledger called 'blockchain,' which records transactions." *Id.* But that does not make it specific, identifiable property. Instead, as alleged in the FAC and as is implied by its very name, cryptocurrency is a form of *currency*, *i.e.*, "digital or virtual currency." FAC ¶ 23; *see United States v. Faiella*, 39 F. Supp. 3d 544, 545 (S.D.N.Y. 2014) ("Bitcoin clearly qualifies as money."). The only case Plaintiff cites in support of his argument, *In re Estate of McLaughlin*, 910 N.Y.S.2d 252 (App. Div. 2010), concerned a claim for return of particular *memorabilia and comic books*, as opposed to a "purely economic" injury. *Id.* at 254. Plaintiff's claimed injury, the loss of digital currency, is purely economic, with the same place of injury as his other common law claims. Plaintiff's argument to the contrary is specious.

## CONCLUSION

The Court should dismiss the FAC in its entirety and decline Plaintiff's request to amend. In the alternative, the Court should convert the Motion on the common law claims to one for summary judgment and order discovery on the statute of limitations defense.

Dated: New York, New York
November 6, 2020

SHER TREMONTE LLP

By: */s/Noam Biale*
Noam Biale
Michael Tremonte
Mark Cuccaro
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
nbiale@shertremonte.com

*Attorneys for Defendant Ellis Pinsky*