UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

MICHAEL TERPIN,

       Plaintiff,      **DECISION AND ORDER**

   -against-       20 Civ. 3557 (CS) (AEK)

ELLIS PINSKY, *et al.*,

       Defendants.
-------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

  Currently before the Court is Plaintiff's letter motion for discovery related to a March 16, 2022 email that was inadvertently sent to Plaintiff's counsel by William M. Brodsky, Esq.  ECF No. 103 ("Pl.'s Mot.").  Mr. Brodsky is an attorney with whom Defendant spoke and considered retaining, *see* ECF No. 103-2 (Pl.'s Mot. Ex. B) at 4, but who never entered an appearance in this matter.  Plaintiff's counsel has asked the Court to determine whether he must destroy the document, as requested by Mr. Brodsky, or whether he may retain it and use it in this litigation. Despite being ordered by the Court to respond to Plaintiff's letter motion, ECF No. 98, Mr. Brodsky has not done so; instead, Defendant's current counsel of record filed a letter in opposition to any use of the March 16, 2022 email, ECF No. 104.

  For the reasons that follow, Plaintiff's letter motion is GRANTED, and Plaintiff may retain the document and use it in this litigation.

## BACKGROUND

  On March 15, 2022, prior to Defendant's retention of his current counsel, Mr. Brodsky contacted Plaintiff's counsel, Paul A. Blechner, Esq., and said that he had been "speaking with [Defendant] about prospective representation."  Pl.'s Mot. at 1.  As reported by Mr. Blechner,

Mr. Brodsky stated during that conversation that "he had a call scheduled with [Defendant] later in the week, needed to discuss payment issues, and would keep us updated." *Id.* According to Mr. Blechner, Defendant—who, at this time, was representing himself *pro se*—notified Plaintiff's counsel during this same time period that he knew Mr. Brodsky had contacted them. *Id.*

On March 16, 2022, Mr. Blechner received an email from Mr. Brodsky. ECF No. 103-1 (Pl.'s Mot. Ex. A). The email was sent to Mr. Blechner's email address and began "Paul, . . . ." *Id.* The email also was copied to the management committee of Mr. Brodsky's law firm. Pl.'s Mot. at 1-2 & Ex. A. As described by Plaintiff's counsel, the five-line email

> referred to a proposal by a potential client for how a retainer would be paid, which was both consistent with our prior conversation with Mr. Brodsky and consistent with a separate, subsequent email . . . sent to Mr. McCarthy [Plaintiff's co-counsel] in which Mr. Brodsky stated that they were making progress on the retention issue with [Defendant] and [Mr. Brodsky] was hopeful.

*Id.* at 2 & Exs. A-B.

Upon receipt of the email, Mr. Blechner asked Mr. Brodsky whether the email was intended for him; Mr. Brodsky responded that it was not and asked Mr. Blechner to delete it. *Id.* at 2. Mr. Brodsky subsequently explained that the email had been intended for his law firm's controller, Paul Buzinski, and when Mr. Brodsky typed "pb" as a shortcut for sending the email, Mr. Blechner's email address was erroneously inserted. *Id.* & Ex. C.

Mr. Brodsky himself has not provided any additional information with respect to the email—there is no indication in the record before the Court that he has ever asserted to Plaintiff's counsel that the email in question was covered by any privilege or other protection against disclosure, and Mr. Brodsky has offered no arguments whatsoever to the Court in connection with this dispute. Instead, Defendant's current counsel filed a letter in which he argues that the

email "should be deleted or in some manner returned to [Mr. Brodsky]," and that "the use of the information from that March 16, 2022, email [should] disallowed."  ECF No. 104 ("Def.'s Opp'n").  Without any citation to authority, Defendant's counsel asserts that "[p]lainly, the March 16, 2022 email was and is a privileged communication; and there needs to be no debate about that fact among experienced lawyers."  *Id.* at 1.  At a status conference on June 14, 2022, counsel for Defendant was given an opportunity to further elaborate on Defendant's argument with respect to the March 16, 2022 email, but counsel did not provide any additional legal support for Defendant's position.

## ANALYSIS

There is no dispute that Mr. Brodsky did not mean to send the March 16, 2022 email to Mr. Blechner.  Yet the mere fact that a document was inadvertently disclosed does not automatically indicate that the receiving party will not be able to retain or use that document. *See, e.g., Graves v. Deutsche Bank Sec., Inc.*, No. 07-cv-5471 (BSJ) (KNF), 2011 WL 721558, at *1-2 (S.D.N.Y. Feb. 10, 2011) (requiring the production of documents disclosed during discovery, but later clawed back under a purported claim of attorney-client privilege, after documents were determined not to be privileged), *aff'd*, 2011 WL 6057554 (S.D.N.Y. Dec. 5, 2011.  The most analogous legal framework for consideration of this issue is supplied by Rule 26(a)(5) of the Federal Rules of Civil Procedure.  That Rule provides that:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.

Fed. R. Civ. P. 26(a)(5).  The circumstances presented in this dispute do not fit perfectly within the Rule 26(a)(5) structure—the email in question here was not produced during discovery, and the attorney who inadvertently disclosed the email never himself made any claim of privilege or protection (other than to request the deletion of the message).  Nevertheless, out of an abundance of caution, Plaintiff's counsel prudently took steps to sequester the email, pledged not to use or disclose the information until the dispute was resolved, and promptly presented the issue to the Court under seal for a determination of the claim, even in the absence of an assertion of privilege.  Now that the issue has been presented to the Court, such a claim of privilege has been made by Defendant's counsel.  Accordingly, the Court will proceed to examine whether the March 16, 2022 email is, in fact, a privileged communication.  No other basis has been suggested by Defendant for the return or destruction of the March 16, 2022 email.

"The broad outlines of the attorney-client privilege are clear: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his [or her] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his [or her] instance permanently protected (7) from disclosure by himself [or herself] or by the legal advisor, (8) except the protection be waived." *United States v. Int'l Bhd. of Teamsters,* 119 F.3d 210, 214 (2d Cir. 1997) (quotation marks omitted).[1]  "The burden of establishing the existence of

_____

[1] In this case, Plaintiff asserts claims for (1) violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c); (2) conversion and conspiracy to commit conversion; (3) money had and received; (4) replevin; and (5) preliminary and permanent injunction.  ECF No. 37 (First Amended Complaint).  Because Plaintiff asserts a claim arising under federal law, even though he also asserts state law claims based on either diversity or supplemental jurisdiction, the federal law of privilege applies.  *See Wellnx Life Sciences Inc. v. Iovate Health Scis. Rsch. Inc.*, No. 06-cv-7785 (PKC), 2007 WL 1573913, at *2 n.1 (S.D.N.Y. May 24, 2007) ("The claims in this case arise under the federal law of the United States, although there are some state claims based on either diversity or supplemental jurisdiction.  In such cases, federal law of privilege applies.").

an attorney-client privilege, in all of its elements, rests with the party asserting it." *Id.*  "A party

invoking the attorney-client privilege must show (1) a communication between client and

counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the

purpose of obtaining or providing legal advice." *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir.

2007).  Courts "construe the privilege narrowly because it renders relevant information

undiscoverable . . . [and] apply [the privilege] only where necessary to achieve its purpose." *Id.*

at 418 (quotation marks omitted).

More specifically, and of particular relevance in this case, "a long and unbroken line of

cases in this Circuit have established that 'in the absence of special circumstances client identity

and fee arrangements do not fall within the attorney-client privilege because they are not the

kinds of disclosures that would not have been made absent the privilege and their disclosure does

not incapacitate the attorney from rendering legal advice.'" *Torres v. Toback, Bernstein & Reiss

LLP*, 278 F.R.D. 321, 322 (E.D.N.Y. 2012) (quoting *Vingelli v. United States*, 992 F.2d 449, 452

(2d Cir. 1993)); *see also Bernstein v. Mafcote, Inc.*, 43 F. Supp. 3d 109, 114 (D. Conn. 2014)

("The Second Circuit has 'consistently held that, absent special circumstances, client identity and

fee information are not privileged [...] While consultation with an attorney, and payment of a fee,

may be necessary to obtain legal advice, their disclosure does not inhibit the ordinary

communication necessary for an attorney to act effectively, justly, and expeditiously.'") (quoting

*In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238, 247-48 (2d Cir. 1986) (*en banc*)).

"Similarly, the attorney-client privilege does not extend to billing records and expense reports

unless they reveal the motive of the client seeking representation, litigation strategy, or the

specific nature of the services provided, such as researching particular areas of law." *Bernstein*,

43 F. Supp. 3d at 114 (quotation marks and ellipsis omitted).  "Other courts in this circuit have

also found that, [a]dministrative documents including billing records, expense reports, correspondence, bills, ledgers, statements, time records, diary entries, time sheets, billing reports and telephone logs fall under the attorney-client privilege *only if* they reveal litigation strategy or other confidential information." *Id.* (quotation marks omitted) (emphasis in original); *see also*, *e.g.*, *Torres*, 278 F.R.D. at 322 (retainer agreement was not privileged).

Here, the email in question discusses only the method by which a "potential client" wanted to pay his initial retainer and whether that method was acceptable to Mr. Brodsky's law firm. Pl.'s Mot. Ex. A. There is nothing in the email revealing the motive of the client seeking representation, litigation strategy, the nature of the services being provided, or any other confidential information. Therefore, the email is not a privileged communication. Defendant does not provide any argument to the contrary, nor does Defendant identify any special circumstances that would bar retention or use of the email. Rather, Defendant asserts—in conclusory fashion and without any citation to law—that "[h]ere, we are dealing with an internal law firm communication, and in that context, communications about fee arrangements are privileged." Def.'s Opp'n at 2. This bare, unsupported assertion fails to satisfy Defendant's burden of establishing the existence of an attorney-client privilege with respect to Mr. Brodsky's email communication.

Accordingly, the Court concludes that there is no basis to order the destruction of Mr. Brodsky's email or to preclude Plaintiff from using the email.[2]

---

[2] Because the Court finds that the email is not subject to the attorney-client privilege, it need not address the other questions raised in Plaintiff's letter motion regarding either the waiver of privilege or whether Plaintiff could use the information in the email even if there was no waiver of privilege.

**CONCLUSION**

For the foregoing reasons, Plaintiff's letter motion (ECF No. 103) is GRANTED, and

Plaintiff is entitled to retain the document in question and use it in this litigation.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 103.

Dated: August 19, 2022
       White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge